**Penny BAKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–03–0066–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 27, 2005.

---

Brian W. Wice, Houston, for Appellant.

Lori Deangelo Fix, Asst. Dist. Atty., Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, Penny Baker, pleaded not guilty to the misdemeanor offense of driving while intoxicated (DWI). The jury found him guilty. In accordance with an agreed recommendation between the State and appellant, the trial court assessed a suspended punishment of 180 days in jail, and a fine of $1,000, and placed appellant on community supervision. *See* TEX. PEN. CODE ANN. § 49.04 (Vernon 2003). In four points of error, appellant contends that the trial court erred by (1) admitting into evidence what appellant contends is effectively a copy of a page of an offense report and declining to give a limiting instruction concerning the exhibit, and (2) overruling appellant's objection and overruling appellant's motion for a mistrial on the grounds that the State allegedly argued matters outside the record. Appellant also contends, in his fifth point of error, that the evidence is factually insufficient to sustain his conviction. We affirm.

### Background

At approximately 2:30 a.m. on February 8, 2002, Houston Police Department (HPD) Officer Green stopped appellant on Westheimer Road in Houston for driving 61 miles per hour in a 35 mile per hour zone. Officer Green asked appellant for his driver's license and proof of insurance. Appellant produced his insurance card, but was unable to locate his driver's license.

Officer Green noticed that appellant had a strong odor of alcohol on his breath and "fair to slurred" speech. Upon questioning, appellant revealed that he had consumed three beers in four hours and that he had drunk his last beer 30 minutes before he was stopped. Officer Green asked appellant if he had any medical problems. Appellant first said he had no medical problems, but later indicated he

was taking medicine for high blood pressure.

Officer Green conducted the Horizontal Gaze Nystagmus (HGN), Rhomberg, walk-and-turn, and one-leg-stand field-sobriety tests on appellant. Appellant's performance on the field-sobriety tests was recorded on videotape by Officer Green, who had videotape equipment in his police car. Each of the field-sobriety tests indicated that appellant was intoxicated, and Officer Green formed the opinion that appellant had lost the normal use of his mental and physical facilities due to the introduction of alcohol into his body.

After appellant's arrest, Officer Green conducted an inventory search of appellant's car and found appellant's wallet and driver's license in the "driver's compartment area." While at the police station, appellant refused to submit a breath specimen into an intoxilyzer instrument. Officer Green did not offer appellant the opportunity to perform the field-sobriety tests at the station because he believed they were not necessary, due to the earlier recording of appellant's performance on the field-sobriety tests at the scene.

At trial, appellant challenged Officer Green's assertions that he was intoxicated by introducing medical records showing that appellant's right ankle had been fractured in 1989 to explain why appellant had difficulty performing the field-sobriety tests. Appellant's defense consisted of testimony from friends and coworkers who were with him during the night that he was arrested and who testified that he was not intoxicated.

### Factual Sufficiency

In his third point of error, appellant contends that the evidence is factually insufficient to sustain the jury's verdict. When conducting a factual-sufficiency review, we view all the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim. App.2004). In conducting this review, we must discuss evidence that appellant contends most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Unless the available record clearly reveals that a different result is appropriate, an appellate court conducting a factual sufficiency review must defer to the jury's determination concerning what weight to give conflicting testimony because resolution often turns on evaluation of credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim.App.2000).

### *Testimony by Officer Green*

Appellant contends that the evidence is factually insufficient because Officer Green's own testimony established that (1) nervousness could account for an individual's mental and physical mistakes, (2) an odor of alcohol would remain on a person who had consumed three beers in over six hours, (3) it would have been important to know that appellant had a preexisting ankle injury that weakened his right ankle and affected his ability to perform field-sobriety tests, (4) appellant performed the counting test perfectly twice and performed the heel-to-toe walk correctly, (5) many people speed on Westheimer Road, (6) appellant did not weave while driving and complied with the officer's request to pull over, (7) no medical evidence equated an inability to correctly estimate 30 seconds, within a margin of error of five seconds, with a loss of normal use of mental or physical faculties, (8) very few people can hold up a leg for 30 seconds, (9)

the officer could not say whether appellant's performance on the field-sobriety tests was "him being normal or him being intoxicated," (10) the officer was not familiar with appellant's normal mental and physical faculties, and (11) in contravention of general practice, no station-house video of appellant was made.

Although appellant's nervousness, the odor of alcohol, the effect of his preexisting ankle injury on his performance of the field-sobriety tests,[1] and his performing parts of the field-sobriety tests properly constitute evidence that could be consistent with sobriety, it was within the province of the jury to reconcile these discrepancies, to the extent that they conflicted with Officer's Green's testimony, in determining what weight to give his testimony that appellant was intoxicated. *See id.; see also Speer. v. State*, 890 S.W.2d 87, 90 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) (stating that jury is free to believe or disbelieve all or any part of a witness's testimony). Concerning appellant's driving characteristics—his speeding, not weaving, and pulling over as requested, as Officer Green explained, these neither prove nor disprove that an individual is intoxicated. As the factfinder, the jury was likewise free to consider these circumstances in evaluating whether appellant was intoxicated. *See Johnson*, 23 S.W.3d at 8; *Speer*, 890 S.W.2d at 90.

Appellant has misstated Officer Green's testimony in asserting that the officer acknowledged that no medical evidence establishes a correlation between underestimating 30 seconds and a loss of normal use of mental or physical faculties. The record shows that Officer Green merely acknowledged that there was "no medical article" on the subject; Officer Green never stated that there was no medical evidence. The record is unclear concerning Officer Green's response to the question asking whether very few people can hold up a leg for 30 seconds. In the context of the record, however, it appears that the officer's testimony focused on difficulties that intoxicated people, rather than sober people, encounter in attempting to hold up a foot for 30 seconds.[2] Regardless, we defer to the jury, which was in the best position to judge the officer's credibility and demeanor, and its resolution of any inconsistencies in the testimony concerning appellant's performance on the field-sobriety tests in deciding whether appellant was intoxicated. *See Johnson*, 23 S.W.3d at 8; *Speer*, 890 S.W.2d at 90.

1. Officer Green explained that it would be important to know that a suspect had a preexisting ankle injury because the officer would document the injury and instruct the person to stand on the uninjured foot during the performance of the field-sobriety tests. Although Officer Green acknowledged that a "bad ankle" could possibly affect physical field-sobriety tests, depending on the severity of the injury, the record shows that appellant stood on his left leg and raised his right leg with the "bad ankle." Accordingly, the jury could have reasonably believed that any injury to that ankle would have been irrelevant to that test.

2. Attorney for appellant: Did you learn in your training that very few, a very small number of people can hold their foot up for thirty seconds if they're intoxicated?

Officer Green: They're likely to drop their foot when they're intoxicated, yes, sir.

. . .

Attorney for appellant: Sir, did you learn in your training that very few people can hold their foot up for thirty seconds?

Officer Green: It's common for intoxicated people to drop their foot, yes, sir.

Attorney for appellant: Did you understand my question?

Officer Green: Yes, sir.

Attorney for appellant: Is it true that your training manual says that very few people can hold their foot up for thirty seconds?

Officer Green: I don't remember that exact quote but something along that, yes, sir.

■ The record reflects that, although Officer Green agreed that he did not know whether "it was him being normal or him being intoxicated," because he had no prior contact with appellant, the officer refused to go so far as to agree that appellant could have been either "intoxicated" or "normal."[3] No law, however, requires that an officer have prior contact with a defendant. Prior knowledge of the defendant's normal state is not a prerequisite to testimony by an officer that he believed that the defendant was intoxicated. *See Railsback v. State*, 95 S.W.3d 473, 484 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); *see also Massie v. State*, 744 S.W.2d 314, 316 (Tex.App.-Dallas 1988, pet. ref'd) (holding that, if evidence exists "that appellant could not use his faculties on the occasion in question, in the manner in which the normal non-intoxicated person would be able to use his faculties, the evidence is sufficient to convict. . . .").

Finally, the question whether stationhouse videotapes of a defendant's performance of field-sobriety tests at the police station are customarily made, or not made, is also an issue properly left to the jury to assess in determining both Officer Green's credibility as a witness and the weight to give his testimony. *See Johnson*, 23 S.W.3d at 8.

### Testimony by Appellant's Witnesses

Appellant also contends that the evidence is factually insufficient to sustain his conviction because he presented testimony that (1) he drove his car without any problems, (2) his friend would not have allowed him to drive if he had been intoxicated, (3) he did not slur his speech, (4) he performed the field-sobriety tests in a manner that was normal for him, (5) he was not intoxicated, and (6) he appeared nervous, but not intoxicated, on the videotape.

The jury was free to accept the testimony presented by the defense witnesses or to reject it, and the jury chose the latter. *See Johnson*, 23 S.W.3d at 8; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Because this case is based exclusively on whether Officer Green or appellant's witnesses were more credible, which testimony was more persuasive, and what weight to give conflicting versions of vital facts, we cannot and should not circumvent the jury's finding. *See Johnson*, 23 S.W.3d at 8; *Cain*, 958 S.W.2d at 407.

### Videotaped Evidence

Appellant further contends that the videotape taken at the scene does not show that he (1) slurred his speech, (2) swayed during the tests, (3) had any trouble walking, and (4) performed the field-sobriety tests normally, except for starting one test prematurely, and using his hands "a bit" during the one-leg-stand test. The jury viewed the videotape. Because it was a videotape only, with no audio, the tape does not demonstrate whether appellant's speech was slurred. No tape recording captured appellant's speech that night. What weight to give to the videotape and

---

3.  During cross-examination, appellant's attorney questioned Officer Green as follows:

> Attorney for appellant: And you do not know if how he performed the night that you arrested him was exactly how he would perform on any occasion?
> Officer Green: No, sir, I have no prior contact with him.
> Attorney for appellant: So you don't know how he performed was just him being normal, do you?

> Officer Green: I don't know if it was him being normal or him being intoxicated.
> Attorney for appellant: Could be either? Is that what you are saying, it could be either?
> Officer Green: If the injuries—
> Attorney for appellant: My question was, could it be either?
> Officer Green: I disagree with that.

to Officer Green's descriptions of appellant's performance of the field-sobriety tests that appellant performed on the videotape were all matters properly left for the jurors' resolution based on their evaluation of the credibility of the testimony. *See Johnson,* 23 S.W.3d at 8; *Cain,* 958 S.W.2d at 407.

### Evidence of Intoxication

■ Officer Green testified that, in his opinion, based on appellant's performance on the field-sobriety tests, appellant was intoxicated by the introduction of alcohol into his body. Officer Green found six out of six possible clues on the horizontal gaze nystagmus (HGN) field-sobriety test administered to appellant at the scene. For the Rhomberg field-sobriety test, appellant estimated 30 seconds as 19 seconds and exhibited a one-inch, front-to-back, sway that was outside the normal range for the test.[4] During his performance of the one-leg-stand field-sobriety test, appellant stood on his left foot and raised his right foot. Appellant had three of the four possible clues for intoxication by swaying, using arms for balance, and hopping. He did not, however, exhibit the fourth clue by dropping the raised foot.[5]

Appellant also performed the walk-and-turn field-sobriety test. Of eight possible clues for intoxication on the walk-and-turn test, appellant had four clues. He began too soon, used his arms for balance, made an improper turn, and, at the turn, "kind of staggered" off the line.[6]

Having reviewed all the evidence in a neutral light and in accordance with appellant's challenges, we cannot say either that the evidence supporting the jury's finding appellant guilty is so weak that the verdict is clearly wrong and manifestly unjust, or that appellant's contrary evidence is so strong that the standard of proof, beyond a reasonable doubt, could not have been met. *See Escamilla v. State,* 143 S.W.3d at 817. We hold that the evidence was factually sufficient to support appellant's conviction for DWI.

We overrule appellant's third point of error.

### Offense Report Admitted as Demonstrative Evidence

■ In his first point of error, appellant contends that the trial court erred by admitting, as State's Exhibit four, a large chart that approximated a page of an offense-report form, as demonstrative evidence. When offered as demonstrative evidence, the chart had preprinted categories on it, on which entries were to be placed, but there were no entries on it.

Pursuant to our abatement of this appeal, the trial court provided a copy of State's Exhibit four for the record on appeal. Exhibit four was entitled, "Evidence of Intoxication." The top third of the page began with title, "Observations Regarding Defendant." Under this section, the form had blanks for "Clothing Condition": "Mussed, Orderly, Soiled, Disorderly." An

---

4. Appellant was instructed to stand with his feet together, arms to his side, and was told to tilt his head back, close his eyes and estimate 30 seconds.

5. Appellant was instructed to tilt his head, keep his arms to his side, elevate one foot six inches off the ground, look down at the foot, and count out loud by one thousands for 30 seconds.

6. Appellant was instructed to put his left foot on the painted line of the roadway, to put his right foot directly in front of it, to take nine heel-to-toe steps, make a turn making a series of small steps, and walk nine heel-to-toe steps back down the same line. Appellant was also told to keep his arms to his side and look at his feet as he counted each step out loud.

empty oval appeared before each of the four words describing the clothing condition. Next to that section was "Type/Color" of "Hat/Cap," "Jacket/Coat," "Shirt/Dress," and "Pants/Skirt," and blank lines after each of the topics for information to be filled in. The form then had the following words listed with a blank line next to the words: "Breath, Walking, Balance, Attitude, Turning, Speech." Below that section, another section called for the following information by providing a blank line next to the subject as follows: "Suspects [sic] Medical Condition," "Suspect Taking Medication? Yes/No"; "If Yes, What?"; "Suspect Admits to Drinking?" "Yes/No How Much?"; "Type (Brand & Size)"; "Time Took 1st Drink"; "Time Took Last Drink"; "When Ate Last"; "Ate What?"; and "Suspect's Statements."

The top middle section of the chart was entitled, "Driving Observations," and the following information was listed in that section: "Liquor Found in Vehicle Yes No"; "Other Passengers in Vehicle Yes/No (Adult_____ Children_____)"; "Road Type"; "Weather"; "Traffic Condition"; "Driving Manner Speeding Yes No"; "How Fast"; "Weaving Yes No"; and "Ran Stop Sign/Red Light Yes No." Ovals appeared before each of the "Yes" and "No" choices, and the other areas had blank lines next to the words.

The State offered Exhibit four as "demonstrative evidence purely for the jury just to—for visual aid so they understand what exactly the police officer is looking for when he's going through the steps about intoxication." Appellant's trial coun-

sel objected that the State would be effectively offering an offense report into evidence if the State intended to have the officer testify to the information on the form and then add information to the form as the officer testified before the jury. The trial court admitted the exhibit as "demonstrative evidence only."

As Officer Green testified, the prosecutor filled in the blanks under the "observation section" on the chart without any objection from appellant's attorney to the written entries' being added to the exhibit.[7] The oval next to "orderly" for the clothing condition was thus darkened. The word "white" was written on the blank line next to shirt/dress," and "tan" was written on the blank line next to "pants/skirt." As Officer Green continued to respond to the prosecutor's questions, information was added to the chart to show that no liquor was found in the vehicle; one adult was found in the vehicle; the road was concrete; and the weather was cool. The oval next to "yes" was filled in to show that appellant was speeding, but the "no" ovals were filled in to show that appellant was not weaving and did not run a stop sign. In addition to showing that appellant had a strong odor of an alcoholic beverage on his breath, the chart also displayed a description of appellant's walk-and-turn as "unsteady," a description of his balance as "poor," a description of his attitude as "fair," and a description of his speech as "fair/slurred." The chart showed that appellant was not taking medication, that the space "medical condition" was left blank, and that appellant admitted

7. Appellant objected only once as the prosecutor filled in the form pursuant to the officer's testimony. When the prosecutor asked Officer Green how he indicated appellant's fair to slurred speech on the offense report, appellant objected on hearsay grounds and argued that Officer Green was taking the answer "right off the report." The court sustained appellant's objection, granted appellant's motion to strike the officer's answer, but denied appellant's motion to strike Exhibit four. This objection was the only objection that appellant offered until the officer concluded his responses to the questions that the prosecutor drew from Exhibit four.

that he had consumed three beers, with his first beer at 8 p.m. and his last beer 30 minutes before he was stopped by Officer Green. Under the section, "Suspect's Statements," the officer wrote that appellant later stated that he was taking high blood pressure medicine. There is also a notation next to the blank for when appellant had last eaten, but the notation is illegible.

The record reflects that the chart, with its entries added as Officer Green testified before the jury, was never admitted into evidence for any purpose other than demonstrative evidence. The chart was never offered or admitted into evidence for all purposes and was admitted as "demonstrative evidence only" before the prosecutor added entries as the officer testified. Once the blanks in the chart were filled out, appellant's trial counsel represented to the court that the chart before the jury was an "exact duplicate" of page two of Officer Green's offense report "through the observation section." When appellant's trial counsel offered Officer Green's offense report into the record for "appellate purposes," the trial court ordered the offense report included in the appellate record. As supplemented following abatement, the record reflects that the trial court was of the opinion that all of that information on the chart exhibited before the jury was the same information contained in the corresponding section of the police report.

◼ We review trial-court rulings admitting evidence under an abuse of discretion standard. *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993). Abuse of discretion occurs when a decision by the trial court is "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992).

◼ Public records and reports, in any form, of public offices or agencies setting forth matters observed pursuant to a duty imposed by law as to which matters there was a duty to report are not hearsay, even if the declarant is available as a witness. TEX.R. EVID. 803(8)(B). An exception controls criminal cases, however, in which records and reports concerning matters observed by police officers and other law enforcement personnel are inadmissible hearsay. *See id.; Cole v. State*, 839 S.W.2d 798, 804–07 & n. 8 (Tex.Crim.App. 1990) (op. on reh'g) (holding that full-time forensic chemists employed by Texas Department of Public Safety were law-enforcement personnel whose reports were not admissible under either the public-record hearsay exception, rule 803(8)(B), or the business-record hearsay exception, rule 803(6)); *Bermen v. State*, 798 S.W.2d 8, 12 (Tex.App.-Houston [1st Dist.] 1990, pet. dism'd) (holding that records referring to defendant as escaped prisoner and escape risk were not admissible because exception for public records, rule 803(8)(B), specifically excluded them as records of law enforcement personnel; further holding that specific exclusion controlled over business-record hearsay exception, rule 803(6)).

Accordingly, had the State attempted to offer Officer Green's actual report into evidence to prove that the observations contained in it were true, the report would properly have been excluded as inadmissible hearsay under rule 803(8)(B), given that Officer Green is a law-enforcement officer and that the report he prepared contains his observations. *See* TEX.R. EVID. 803(8)(B); *see also* TEX.R. EVID. 801(d) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial, that is offered in evidence to prove the truth of the matter asserted in the statement"). In keep-

ing with rule 803(8)(B)'s prohibition, the officer's actual offense report here was not admitted into evidence for any purpose, and appellant does not complain that the actual offense report was erroneously admitted.

Rather, appellant contends that, once completed and filled in as a result of Officer Green's testimony, the contents of the chart approximated the contents of the inadmissible police report. Accordingly, appellant argues, the trial court erred by admitting the blank chart, which had the same categories as the offense report, as demonstrative evidence, because the completed chart essentially recreated the officer's offense report before the jury as he testified and admitting the chart as demonstrative evidence allowed the State to circumvent the hearsay prohibition.

Appellant's issue presents an interesting question concerning how a police officer may testify. Although a law-enforcement officer's report is inadmissible under rule 803(8)(B), well-settled precedent interpreting rule 611 of the Rules of Evidence recognizes that the officer may refer to his report to refresh his memory and may then testify in open court from his refreshed memory. *See McCoy v. State*, 877 S.W.2d 844, 845 (Tex.App.-Eastland 1994, no pet.). It is not unreasonable, therefore, to anticipate that a police officer will refer to the offense report during trial to refresh his memory of the events and that the officer will testify consistently with his police report. Thus, to a large extent and in most instances, the officer's testimony will likely be similar to the contents of his offense report. An officer's testimony is not inadmissible merely because his testimony is identical to the contents of his offense report. *Johnson v. State*, 846 S.W.2d 373, 376 (Tex. App–Houston [14th Dist.] 1992), *rev'd on other grounds*, 853 S.W.2d 574 (Tex.Crim.App.1993) (noting

that officer referred to, but did not read from, offense report not in evidence when stating that admitted photocopy of $10 bill was identical to $10 bill referred to in offense report).

As initially offered by the State, the chart falls under the category of demonstrative evidence used as a visual aid or illustration. *See* 1 STEVEN GOODE ET AL., GUIDE TO THE TEXAS RULES OF EVIDENCE § 401.5 at 127 (3d ed. 2002) (GOODE). The trial court's discretion to permit the use of visual aids, charts, and diagrams during trial is well-established. *See Markey v. State*, 996 S.W.2d 226, 231 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (listing numerous cases). To be admissible, objects offered as demonstrative evidence must meet the tests of relevancy and materiality, as well as the limitations imposed by rule 403. *See* GOODE § 401.5 at 128. In contrast to mere demonstrative evidence, which is admitted solely for purposes of illustration, the trial court may, in the exercise of its discretion, admit into evidence for all purposes either "real" evidence, for example, the actual objects involved in a case, or "reproduced real" evidence, for example, photographs, maps, or drawings that approximate the actual objects or places involved in a case. *See id.; Markey*, 996 S.W.2d at 231 (holding that trial court erred, but harmlessly, by admitting into evidence, for all purposes, chart summarizing officer's testimony).

Appellant objected to the chart when it was first offered and had not yet been filled in on the grounds that it was hearsay. Nothing in the hearsay provisions of the rules of evidence prohibited the State from introducing the chart as demonstrative evidence. As noted above, "hearsay" is a statement, *other than one made by the declarant while testifying at the trial*, offered in evidence to prove the truth of the matter asserted in the statement. *See*

TEX.R. EVID. 801(d) (emphasis added). When the prosecutor offered the chart as demonstrative evidence, it contained no assertions of any kind because the chart consisted of mere blanks and ovals to which information was yet to be added. The chart made no assertions until the officer responded to questions by the prosecutor. As the officer responded, the prosecutor inserted the responses into the blanks and ovals. The information on the chart was thus tendered to the jury in open court as the officer testified. By definition, the information offered by the officer as he testified was not an "out of court statement" offered to prove the truth of the matter asserted. *See id.*

Moreover, because nothing in the record shows that the chart was an actual copy of the offense report itself—as opposed to a chart that contained the same information—the chart was not inadmissible under rule 803(8)(B) of the Rules of Evidence. *See* TEX.R. EVID. 803(8)(B).

■ We cannot conclude that the chart showing information similar to that contained in a police report is inadmissible as demonstrative evidence solely because the officer used the same words that he used in his offense report to describe appellant's actions. Under the circumstances presented here, therefore, we conclude and hold that the demonstrative use of the chart was not inadmissible hearsay.[8]

We overrule appellant's first point of error.

## Limiting Instruction

■ In his second point of error, appellant contends that he was entitled to a limiting instruction cautioning jurors that State's Exhibit four, the chart addressed above, was admitted solely for demonstrative purposes. Rule of Evidence 105(a) states that, "when evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Limiting instructions ensure that the jury does not rely on admitted evidence for an impermissible purpose. *Lewis v. State*, 815 S.W.2d 560, 566 (Tex.Crim.App.1991). The court need not provide a limiting instruction when the evidence can be considered on any relevant issue in the case. *Lane v. State*, 822 S.W.2d 35, 40 (Tex.Crim.App.1991).

■ We conclude that the trial court erred by not instructing the jury that the chart on which the prosecutor recorded Officer Green's responses was admitted into evidence for demonstrative evidence only. The chart was used as a visual aid to assist the jury while the officer testified, but it was not admitted into evidence for the jury's use while they deliberated. *See Markey*, 996 S.W.2d at 231. Accordingly, the trial should have instructed the jurors that the chart had a purpose limited to assisting them, if it did, in understanding the officer's testimony as he testified in court.

■ To warrant reversal of the judgment of the trial court, error must affect the substantial rights of the parties. TEX.R.APP. P. 44.2(b). A substantial right

---

8. Even if we had determined that the trial court erroneously admitted the chart, any error would have been harmless. As the Beaumont Court of Appeals has concluded, when a witness testifies about the contents of a report, as here, any error in admitting an offense report into evidence is not reversible. *Clark v. State*, 704 S.W.2d 561, 565 (Tex.App.-Beaumont 1986, no pet.). Because the contents of Exhibit four were cumulative of testimony by Officer Green to which appellant did not object, any error by the trial court in admitting State's Exhibit four as demonstrative evidence was harmless.

is affected "when the error had a substantial and injurious effect or influence in determining a jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). We should not overturn a verdict if we have fair assurance that the error in question either did not influence the jury or, if it did influence the jury, that its effect was only slight. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

We disagree with appellant's contention that the trial court committed harmful error by not providing a limiting instruction because the chart bolstered the officer's testimony. As addressed above, the chart was a visual aid that merely recorded, in written form, what the officer stated orally. Because the officer attested, through his oral testimony, to all of the information on the chart, the contents of the chart were properly admitted for all purposes before the jury. We therefore conclude that the trial court's error in not instructing the jury that the chart was limited to use as a visual aid during the officer's testimony was harmless.

We overrule appellant's second point of error.

### State's Closing Argument

■ In his fourth and fifth points of error, appellant contends that the trial court erred by overruling appellant's objections that the prosecutor asserted matters beyond the record in closing argument to the jury. Proper jury argument is limited in scope to the following: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to the argument of opposing counsel; and (4) pleas for law enforcement. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App. 1997); *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991).

### NHTSA Standards

■ Appellant contends that the State argued outside the record and injected new facts that harmed appellant when the prosecutor stated that Officer Green performed the HGN test exactly as NHTSA standards dictate.[9] The State counters that its argument was a summation of the evidence and a reasonable deduction from the evidence.

During closing argument, the prosecutor stated, "Now the Defense would have you believe that the [HGN] test was performed incorrectly. Now according to N.H.T.S.A. standards ... that officer did it exactly...." When appellant's trial counsel objected that the NHTSA standards were not in evidence, the trial court overruled the objection.

Officer Green had previously testified (1) that he is a certified practitioner in the HGN test; (2) that, as part of his training, he was taught the HGN, walk-and-turn, one-leg-stand, and Rhomberg standardized field-sobriety tests; and (3) that, the "N.H.T.S.A. sets the standards for these tests." The State's argument to the jury that the officer performed the tests according to NHTSA standards was not a reasonable deduction from evidence that was properly before the jury. Accordingly, the trial court erred by overruling appellant's objection to the prosecutor's argument.

■ Rule 44.2(b), which now governs reversible error in criminal case, requires that we disregard all error, except constitutional error, "that does not affect [appellant's] substantial rights." *See* Tex.R.App. P. 44.2(b). Appellant does not contend that the trial court's error was constitutional. The Court of Criminal Appeals has identified three relevant factors for assess-

9. "NHTSA" stands for the National Highway Traffic and Safety Administration.

ing the impact of harm arising from non-constitutional jury-argument error under rule 44.2(b), as follows: (1) the "severity of the conduct (the magnitude of the prejudicial effect of the prosecutor's remarks)"; (2) the "measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge)"; and (3) the "certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *See Threadgill v. State,* 146 S.W.3d 654, 666–67 (Tex.Crim.App. 2004) (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998)).

The first harm factor, the degree of misconduct, was mild to insignificant in this case. Although the trial court overruled appellant's objection to the argument, the prosecutor proceeded in closing argument as if the objection had been granted and switched to an entirely different topic for argument, which he continued without any additional references to the NHTSA. Appellant did not request that the trial court instruct the jury to disregard the comment, and the trial court therefore did not provide instructions to disregard. Regarding the third factor, the certainty of conviction without the prosecutor's fleeting reference to NHTSA standards, given the evidence of appellant's guilt, we cannot say that the improper argument played a major part in the jury's finding appellant guilty. The record of the trial of this case shows that the major issue in dispute was whether the jury should believe appellant's version of the facts or Officer Green's. Because no testimony in the record established what the NHTSA standards were or explained the significance, if any, of compliance or non-compliance with those standards, the prosecutor's erroneous statement could not reasonably have affected the jury's decision to convict appellant.

Accordingly, although the prosecutor went beyond the record by referring to the officer's compliance with NHTSA standards, we cannot say that overruling the objection was harmful error under the record presented here. *See Threadgill,* 146 S.W.3d at 666.

### Videotape

Appellant also complains that the State's attorney improperly argued matters outside the record when he stated, "Now, Mr. Trichter gets up here with that video tape and says, wouldn't you like to have the original? Wouldn't you like to have the original? That officer gets on the stand and says this is an exact duplicate of the original. . . . He recycles those tapes after transferring it to another tape which is standard practice throughout the county and it has been." The trial court sustained appellant's attorney's objection, instructed the jurors to disregard the statement, and denied appellant's motion for mistrial. Appellant contends that the trial court erred by not declaring a mistrial.

An instruction to the jury to disregard improper jury argument generally cures the error. *Wilkerson v. State,* 881 S.W.2d 321, 327 (Tex.Crim.App.1994). Moreover, we may presume that the jury will obey the trial court's instructions to disregard. *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987). A trial court errs by denying a motion for mistrial if the improper argument is extreme or injects new and harmful facts into the record. *Wilkerson,* 881 S.W.2d at 327. Officer Green testified at trial that "we recycle our tapes." Although he does not state that this is standard practice, by choosing to say "we," the officer implies that all police officers recycle their tapes. We disagree, therefore, that the State's attorney's argument was extreme or injected new and harmful facts into the record. *See id.* Accordingly, we conclude

that the trial court's instruction to the jury to disregard the prosecutor's allegedly improper jury argument cured any possible harm from the statement. *See id.*

We overrule appellant's fifth point of error.

## Conclusion

We affirm the judgment of the trial court.