

# NUMBER 13-17-00433-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VICTOR HUGO SUAREZ,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the County Court at Law No. 2
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Hinojosa
Memorandum Opinion by Justice Hinojosa**

### I. INTRODUCTION

A jury convicted appellant Victor Hugo Suarez of driving while intoxicated with a blood alcohol concentration of .15 or more, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. §§ 12.21, 49.04(d) (West, Westlaw through 2017 1st C.S.). By four issues, Suarez contends the trial court erred because it: (1) convicted with legally insufficient

evidence; (2) issued erroneous jury instructions; (3) improperly admitted police reports over objection; and (4) wrongly denied a motion to suppress.

We affirm.

## II. BACKGROUND

On December 22, 2011, Suarez was involved in a two-vehicle collision which occurred at the intersection of Nolana and McColl streets in McAllen, Hidalgo County, Texas. He was arrested and charged with driving while intoxicated.

### A. The Suppression Hearing

Prior to a trial on the merits, Suarez's attorney filed a motion to suppress. Officer Pedro Hernandez, a fourteen-year veteran of the McAllen Police Department, testified as the arresting officer. During the suppression hearing, the State asked Officer Hernandez to identify Suarez in the courtroom. Officer Hernandez replied that he could not because the arrest was made three years earlier. The State then attempted to refresh Officer Hernandez's memory of Suarez with the DIC-23 "Peace Officer's Sworn Report," which included a copy of Suarez's driver's license. *See* TEX. R. EVID. 612. Suarez's attorney objected, contending that Officer Hernandez should remember Suarez from his personal knowledge and not from a driver's license. The following exchange occurred:

State: Judge, our response would be that this is part of the case file we received and that he is allowed to refresh his memory based on that.

Court: Yeah, but do you have anything to show at that point before he makes that determination?

Hernandez: I did indicate on my report the driver's license number [is] how he identified himself.

2

The trial court allowed the State to proceed. Officer Hernandez reviewed his report and was then able to identify the defendant. Suarez's attorney re-urged her objection, which the trial court overruled. The court eventually denied the motion to suppress.

After the hearing, the trial court issued Findings of Fact and Conclusions of Law. The court found that although Officer Hernandez initially could not identify Suarez, he did after refreshing his memory with his report:

10.     The Court FINDS that, during said Motion to Suppress, Hernandez was initially unable to identify the Defendant in court.

11.     The Court FINDS that the Defendant identified himself to Hernandez, at the scene of the accident, by providing his driver's license. The Court FINDS that the DIC-23 report was provided in the State's case file.

12.     The Court FINDS that Hernandez properly identified and authenticated his signature on the DIC-23, presented by the State.

13.     The Court FINDS that, after refreshing his memory with the driver's license in the DIC-23, Hernandez was able to properly identify the Defendant in court.

The trial court further concluded that "upon claiming insufficient recollection, peace officers may refer to their offense report to refresh their memory, and may then testify. This testimony may be given, regardless if the testimony is identical to the contents of their offense report."

## B.     Trial

Officer Hernandez testified again at trial. He recalled that after he arrived at the accident scene on the night in question, he noticed that Suarez had "slurred speech, and glassy eyes, and unsteady balance, and an odor of alcohol emitting from his breath."

3

Based on these observations, the officer decided to conduct field sobriety tests to determine if Suarez was intoxicated. Officer Hernandez performed three tests on Suarez: (1) the horizontal gaze nystagmus (HGN); (2) the one-leg stand; and (3) the walk-and-turn. Officer Hernandez noted that Suarez had "involuntary jerking" of the eyes while performing the HGN, a sign of intoxication. He also noted that Suarez swayed, used his arms to balance, and put his foot down during the one-leg stand, and failed to walk heel-to-toe and again used his arms to balance during the walk-and-turn. Based on Suarez's performance of these tests, Officer Hernandez took Suarez into custody for driving while intoxicated.

Officer Hernandez then transported Suarez to McAllen Police Department, where he read Suarez his *Miranda* warnings and asked him questions from a "DWI Interview Questionnaire." During the interview, Suarez admitted to driving and drinking "three or four shots" of "Jack Daniel's" one hour prior to driving that evening. Officer Hernandez wrote all of Suarez's answers to the questions onto the questionnaire form. After the interview, Suarez consented to a breathalyzer test. The test measured Suarez's blood alcohol concentration to be .163, over double the legal limit.

Officer Hernandez videotaped the interview and breathalyzer test. The court admitted State's Exhibit # 1, the DVD video of the interview and breath test, into evidence. There was no objection. The State then attempted to admit State's Exhibit # 3, the actual written DWI Interview Questionnaire where Officer Hernandez had written down Suarez's answers to the questions. The exhibit was admitted over objection. The court also admitted Exhibit # 6, the "Texas Peace Officer's Crash Report," over objection.

4

On cross-examination, Officer Hernandez admitted that he did not see Suarez driving when he arrived at the accident scene; instead, he testified that all parties were already outside of their vehicles. He also disclosed that he learned how to conduct field sobriety tests through an eight-hour training course at the McAllen Police Department, but that his certification had expired at the time of Suarez's arrest.

Officer J.R. Razo testified. Officer Razo shared that he is one of the McAllen Police Department's certified Intoxilyzer operators. He renews his certification every year with the Texas Department of Public Safety. He stated that the Intoxilyzer 5000 instrument used to test Suarez was properly serviced and calibrated when Suarez was tested. Mary Ann Perales, technical supervisor for the Intoxilyzer 5000, also verified that the instrument was properly functioning at the time of Suarez's breath test.

The jury found Suarez guilty of driving while intoxicated with a blood alcohol concentration of .15 or more, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. §§ 12.21, 49.04(d). The trial court sentenced Suarez to a $400 fine and a year in jail, probated for eighteen months. This appeal ensued.

### III. DISCUSSION

#### A. Legal Sufficiency of the Evidence

Suarez's first issue asserts that the evidence is insufficient to support his DWI conviction. Specifically, Suarez argues the jury charge required the State to prove that Suarez introduced "alcohol, a drug, a controlled substance, *and* a combination of two or more of these substances" into his body, not "alcohol, a controlled substance, *or* a combination of two or more of these substances." Suarez argues that the State had to

5

prove the conjunctive, not the disjunctive, to establish intoxication and that it failed to do so.

### 1. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the elements of the offense beyond a reasonable doubt. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, (1979)). In making this review, we consider all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). We also consider direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under this review, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). To be entitled to a reversal of conviction on an insufficiency of the evidence claim, appellant must show that no rational jury could have found all of elements of the offense beyond a reasonable doubt. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773

6

(Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried.   *Id.*

When there is a variance in the jury charge, only a "material" variance—one that actually prejudices a defendant's substantial rights—will render the evidence insufficient. *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018).   A material variance occurs when the indictment either:   (1) fails to adequately inform the defendant of the alleged charge, or (2) subjects the defendant to the risk of being prosecuted later for the same crime.   *See id*.

The Texas Court of Criminal Appeals has recognized three different categories of variances in jury charges:

(1) a statutory allegation that defines the offense; not subject to materiality analysis, or, if it is, is *always material*; the hypothetically correct jury charge will always include the statutory allegations in the indictment;

(2) a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution; *sometimes material*; the hypothetically correct jury charge will sometimes include the non-statutory allegations in the indictment and sometimes not;

(3) a non-statutory allegation that has nothing to do with the allowable unit of prosecution; *never material*; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.

*Id*. (emphasis in original) (footnotes removed).

In sum, in a sufficiency review, appellate courts can tolerate a variance in the charge if it is not so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument. *Id*.

### 2. Analysis

In the underlying case, although the jury was charged in the conjunctive—requiring proof of intoxication "by introduction of alcohol, a drug, a controlled substance, *and* a combination of two or more of these substances"—we review the sufficiency of the evidence against a hypothetically correct jury charge. A hypothetically correct charge for DWI would instruct the various manners and means of intoxication in the disjunctive. *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (defining "intoxication" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body"); *Malik*, 965 S.W.2d 234; *see also Ronk v. State*, 250 S.W.3d 467, 470 (Tex. App—Waco 2008, pet. ref'd) ("Although the jury charge in this case submitted these alternatives in the conjunctive, a hypothetically correct jury charge would have submitted them in the disjunctive.").

Officer Hernandez testified that he responded to a two-vehicle collision on December 22, 2011. When he arrived at the accident scene, he noted that Suarez had "slurred speech, and glassy eyes, and unsteady balance, and an odor of alcohol emitting from his breath." Suarez performed three standardized field sobriety tests and showed clues of intoxication in each of these tests. Some of these clues were nystagmus, swaying, balancing himself with his arms, and failing to walk heel-to-toe. Although

8

Officer Hernandez's certification to administer these exams may have lapsed, this fact goes to the weight and not the admissibility of the field sobriety test evidence. *See Wesbrook*, 29 S.W.3d at 111. The jury had the opportunity to evaluate Officer Hernandez's credibility as a fourteen-year law enforcement officer when he administered these tests.

The record further included a video wherein Officer Hernandez used a DWI Interview Questionnaire to ask Suarez questions about the accident at the McAllen Police Department. The video reflects that Suarez admitted to driving his vehicle one hour after drinking "three or four" shots of "Jack Daniel's" whiskey. Suarez also consented to a breathalyzer test which showed his blood alcohol concentration to be .163 at the time the analysis was performed. This result is double the legal limit. And two separate witnesses verified the proper functioning of the breathalyzer instrument used to test Suarez's blood alcohol concentration.

We find the evidence legally sufficient to sustain Suarez's conviction. The variance in the jury charge, which required the State to prove intoxication "by introduction of alcohol, a drug, a controlled substance, *and* a combination of two or more of these substances" was not so material or great that the proof at trial "showed an entirely different offense" than what was alleged in the charging instrument. *See Ronk*, 250 S.W.3d at 470. Suarez was adequately informed of the DWI charge alleged against him and there is no danger that he can be prosecuted for the same crime later. *Ramjattansingh*, 548 S.W.3d at 547. Measuring the weight of the evidence against a hypothetically correct charge, we conclude that legally sufficient evidence supports Suarez's conviction.

9

We overrule Suarez's first issue.

## B.     The Jury Charge

By his second issue, Suarez contended that the jury charge contained egregious error because it contained a theory of intoxication not supported by the evidence.   Again, Suarez did not object to the jury instruction regarding intoxication by "a drug, a controlled substance, *and* a combination of two or more of these substances" (emphasis in original). Suarez asserts that the charge as written in the conjunctive egregiously harmed him.

### 1.  Standard of Review and Applicable Law

In analyzing a jury charge issue, we first determine whether error exists.   *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (en banc) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If we find error, then we consider whether the error was harmful under the appropriate standard.   *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").   And "trial courts are obliged to instruct juries on 'the law applicable to the case,' which includes the statutory definitions that affect the meaning of the elements of the offense."   *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2017 1st C.S.).

Suarez's attorney did not object to the jury charge.   Therefore, any potential error in the charge is reviewed only for "egregious harm."   *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008).   "This is a difficult standard to meet and requires a

10

showing that the defendants were deprived of a fair and impartial trial." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). "[T]he error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id.* In determining whether egregious harm is shown, we look at the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the whole record of the trial. *Id.* This analysis is fact-specific and done on a case-by-case basis. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

### 2. Analysis

The first step of our analysis is to determine whether there was error in the jury charge. We answer this question in the affirmative. The charge was erroneous because the use of the conjunctive "and" instead of the disjunctive "or" in the jury charge, discussing the ways Suarez could have become intoxicated, was incorrect. *See* TEX. PENAL CODE ANN. § 49.01(2)(A).

Having found error, the second step of our analysis is to determine whether Suarez suffered "egregious harm." *See Almanza*, 686 S.W.2d at 174. Based on our review of the record, we find no egregious harm. Suarez and his attorney understood that he was on trial for driving while intoxicated with a blood alcohol concentration of .15 or more, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. §§ 12.21, 49.04(d). The evidence adduced at trial—from Suarez's admission to driving his vehicle one hour after drinking three to four shots of whiskey, to failing the standardized field sobriety tests, to recording a .163 on the properly functioning Intoxilyzer 5000—supports the jury's conviction. Our

11

factual review of the Suarez's case record does not show that the charge error affected the basis of his case, deprived him of a valuable right, or vitally affected a defensive theory. *See Nava*, 415 S.W.3d at 298.

We overrule Suarez's second issue.

**C.    The Admission of the DWI Interview Form and Police Report**

Suarez's third issue contended the trial court committed reversible error in admitting Exhibit # 3, the "DWI Interview Questionnaire," and Exhibit # 6, the "Texas Peace Officer's Crash Report," because both documents constituted inadmissible hearsay. Suarez argues that this "was extremely harmful since there was debate over whether Suarez was driving and the police report placed Suarez behind the wheel." Suarez further claimed that this evidence bolstered the State's case that he had been drinking prior to the accident.

**1.  Standard of Review and Applicable Law**

We review the admission of evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996) (citing *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990)). A reviewing court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Id*. at 102; *Montgomery*, 810 S.W.2d at 391. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985) (citing *Sw. Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex. 1965)).

### 2. Analysis

The court admitted the DVD video of Suarez's DWI interview at the McAllen Police Department. Suarez did not object to this. Because the video showed Officer Hernandez asking Suarez the questions from the DWI Interview Questionnaire, this information—including Suarez's admission of drinking "three or four shots" of "Jack Daniel's" and then driving one hour later—was already in evidence. "When a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal." *Womble v. State*, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981). We overrule Suarez's third issue because we find that he waived it when he failed to object to the admission of the videotape. *See* TEX. R. APP. P. 33.1(a)(1). Moreover, because this information was already in evidence, any error in admitting it was harmless. *See id*. R. 44.2(b).

### D. Motion to Suppress

Suarez's fourth issue argues that the court erred by denying his motion to suppress because Officer Hernandez improperly reviewed his offense report before identifying Suarez during the suppression hearing. During the hearing, Officer Hernandez claimed he could not recognize the defendant because the arrest was made three years prior. The State then, over objection, refreshed Suarez's memory with Suarez's driver's license. In the trial court's "Findings of Fact and Conclusions of Law," the court held that, "upon claiming insufficient recollection, peace officers may refer to their offense report to refresh their memory, and may then testify."

### 1. Standard of Review and Applicable Law

We apply a bifurcated standard of review on motions to suppress, giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law of search and seizure. *See Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) (reviewing courts defer to trial court findings of fact unless clearly erroneous); *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc) (explaining that we defer to the trial court "especially when the trial court's fact findings are based on an evaluation of credibility and demeanor").

### 2. Analysis

Here, we give total deference to the trial court's finding that Suarez originally identified himself to Officer Hernandez at the accident scene with his driver's license. We further defer to the finding that, although Officer Hernandez initially could not identify Suarez in the courtroom because the suppression hearing was three years after the arrest, he was able to after refreshing his memory with his police report.

*Baker v. State* provides further guidance on this issue.   177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.).   In *Baker*, the Houston appellate court discussed the issue of law enforcement officers using their reports to refresh their memories while testifying:

> Although a law-enforcement officer's report is inadmissible under rule 803(8)(B), well-settled precedent interpreting rule 611 of the Rules of Evidence recognizes that the officer may refer to his report to refresh his memory and may then testify in open court from his refreshed

14

memory. *See McCoy v. State,* 877 S.W.2d 844, 845 (Tex. App.—Eastland 1994, no pet.).   It is not unreasonable, therefore, to anticipate that a police officer will refer to the offense report during trial to refresh his memory of the events and that the officer will testify consistently with his police report.

*Baker*, 177 S.W.3d at 123.

After giving total deference to the trial court's findings that Officer Hernandez properly refreshed his memory with his police report, and reviewing the application of the law de novo, we conclude that the trial court did not err in denying Suarez's motion to suppress.   We overrule Suarez's fourth issue.

## IV. Conclusion

Having overruled all of Suarez's issues on appeal, we affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of May, 2019.