

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-305-CR

DEBRA HARTSOCK                                                            APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

### FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

## I. Introduction

Appellant Debra Hartsock appeals from her conviction for driving while intoxicated. In her sole point, Appellant contends that the admission of a DVD—showing a person's eyes with and without nystagmus—as demonstrative evidence was reversible error because the State failed to establish the scientific reliability of the Horizontal Gaze Nystagmus (HGN) test performed on the DVD. We will affirm.

## II. Background

Shortly before 2 p.m. on November 19, 2008, while driving northbound on Locust Street in Denton, Texas, Lawrence Gregg observed a Jeep approximately 100 yards in front of him lose control, roll a couple of times, and come to rest on the driver's side with the undercarriage facing northeast. Gregg testified that the road was dry and that he did not observe any cars or obstacles that would have forced the Jeep off the road. Gregg's passenger called 9-1-1 while Gregg checked on the Jeep driver. As Gregg approached, he smelled alcohol coming from the Jeep and saw Hartsock crawl out of the passenger window.

Gregg testified that Hartsock appeared to be in shock, that she profusely cursed about wrecking her Jeep, but that she did not appear to be injured except for a cut on her face. Gregg also testified that Hartsock slurred her speech and appeared drunk.

Responding to a dispatch call, Denton Police Officers Kevin Vice and Alfonso O'Rozco arrived at the accident scene and observed Hartsock standing near her vehicle, crying hysterically, squatting up and down, and alternately screaming and cursing. Officer Vice noticed a couple of small cuts on Hartsock's fingers but did not observe any signs of a head injury or bruising. Hartsock denied being injured. When Officer Vice inquired as to the cause of the accident, Hartsock replied that she was talking on her cell phone and "the next thing she knows, she wrecks." Officer Vice testified he detected the smell of alcohol on Hartsock's breath.

2

The paramedics found no other injuries, and Hartsock refused transport to the hospital. Officer Vice observed Appellant had red and glassy eyes, slurred speech, and staggered as she walked toward his patrol car. Hartsock denied drinking alcohol, but told Officer Vice she had taken some nonprescription medication three days earlier. Officer Vice administered the HGN test to Hartsock. He testified that Hartsock exhibited all six clues of intoxication, could not correctly follow his instructions, and swayed while he administered the test.

While Officer O'Rozco investigated the accident, during which he removed two rum bottles—one empty and one half-empty—from Hartsock's vehicle, Officer Vice asked Hartsock to perform additional field sobriety tests. Hartsock could not correctly recite the alphabet. Hartsock also failed the walk-and-turn test in that she was neither able to follow Officer Vice's instructions nor maintain her balance during the test, eventually refusing to complete the test. Officer Vice testified that based on his observations and the totality of circumstances, he concluded that Hartsock had lost the normal use of her mental and physical faculties, and he arrested her for the offense of driving while intoxicated. He also testified that Hartsock refused to provide a blood sample to be tested for her blood alcohol concentration.

On February 12, 2009, the grand jury indicted Hartsock for the third-degree felony offense of driving while intoxicated with two prior convictions. The indictment contained an enhancement paragraph raising the punishment range to that of a second-degree felony. At the jury trial on August 19, 2009, Hartsock pleaded not

3

guilty to the primary charge of driving while intoxicated and pleaded true to the enhancement paragraphs regarding two prior driving while intoxicated convictions.

During the trial, the State offered—for demonstrative purposes only—a DVD featuring videos of an individual's eyes with and without nystagmus. Upon Hartsock's objection, the trial court held a hearing outside the presence of the jury to determine the admissibility of the DVD. Officer Vice testified that the DVD is a training tool used by the district attorney's office to show police officers how a person's eyes look with and without horizontal gaze nystagmus, that he had viewed the videos at the district attorney's office during a training session, and that the videos would assist him with his testimony. He further testified that he did not know who created the videos. Hartsock objected because Officer Vice could not vouch for the authorship, authenticity, or scientific principles applied in the videos. The trial court overruled Hartsock's objection.

Officer Vice testified that Hartsock's eyes are not on the DVD, but that the videos would help the jury understand "what someone's eyes looked like when they have HGN and when they don't." The trial court instructed the jury that the videos did not show Hartsock's eyes, and did not indicate the level of alcohol consumption the individual in the video consumed in order to demonstrate HGN, but was being shown "just to aid you in the officer's testimony what he observed, or at least to show you what he believed he observed." After the DVD was played for the jury, Officer

4

Vice testified that he saw all six clues of intoxication in the DVD's second video and that they were the same six he observed in Hartsock's eyes.

The jury found Hartsock guilty and assessed her punishment at fourteen years' confinement. The trial court sentenced her accordingly.

### III. Analysis

In her sole point on appeal, Hartsock contends that the trial court erred by admitting the DVD as demonstrative evidence. Specifically, Hartsock argues that the DVD was inadmissible because the State failed to establish the scientific reliability of the test it portrayed.

#### A. Standard of Review

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's ruling was within the zone of reasonable disagreement, there is no abuse of discretion. *Id.*

#### B. Trial Court's Admission of DVD Not An Abuse of Discretion

#### 1. Demonstrative Evidence Is Admissible To Explain Testimony

Demonstrative evidence is evidence admitted to serve as a visual aid or illustration that meets the tests of relevancy and materiality, as well as the limitations imposed by Texas Rule of Evidence 403. *Baker v. State*, 177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The trial court's discretion to permit the use of visual aids, charts, and video recordings during trial is well established.

5

*Marras v. State,* 741 S.W.2d 395, 404–05 (Tex. Crim. App. 1987), *overruled on other grounds*, 851 S.W.2d 853, 860 (1993) (holding that a videotaped re-enactment of the defendant's flight from the crime scene was admissible); *Baker*, 177 S.W.3d at 123.

Demonstrative evidence has no independent relevance to the case but is offered to help explain or summarize the witness's testimony or to put events and conditions into a better perspective. *Torres v. State*, 116 S.W.3d 208, 213 (Tex. App.—El Paso 2003, no pet.). To establish the relevancy of demonstrative evidence, the proponent must first authenticate it. *Id.* The proponent is then required to establish that the evidence is fair and accurate and that it helps the witness to demonstrate or illustrate his testimony. *Id.*; *see Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. [Panel Op.] 1981) (holding that demonstrative evidence is admissible if it tends to solve some issue in the case and is relevant, that is, if it sheds light on the subject at hand). Demonstrative evidence must be properly identified by showing that the item in question is what its proponent claims as opposed to any idea of speculation, conjecture, or presumption of what the exhibit represents. *Torres*, 116 S.W.3d at 213 (citing *Vollbaum v. State*, 833 S.W.2d 652, 657 (Tex. App.—Waco 1992, pet. ref'd)). Demonstrative evidence has no probative force beyond that which is lent to it by the credibility of the witness whose testimony it is used to explain. *Id.*

**2. As Demonstrative Evidence, State Did Not Need to Prove Scientific Reliability of HGN Test on DVD**

6

Hartsock argues that because Officer Vice neither knew who made the videos nor the qualifications of the HGN test administrator on the DVD, the State submitted no proof that the scientific technique judicially noticed to be reliable in *Emerson v. State* was properly followed in making the videos. *See* 880 S.W.2d 759, 768–69 (Tex. Crim. App. 1994).

To establish the reliability of scientific evidence, the proponent must show: (1) the underlying scientific evidence is valid; (2) the technique applying the principle must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). In *Emerson*, the court took judicial notice that the HGN test, as designed and promoted by the National Highway Traffic Safety Administration (NHTSA), meets the first two of the three *Kelly* requirements for determining the admissibility of scientific evidence. *Emerson*, 880 S.W.2d at 768. However, evidence must show that the third requirement was met—that the HGN technique was applied properly—on the occasion in question. *Id.* at 768–69.

Here, a review of the record indicates that the DVD was not used as a scientific method of proof that Hartsock was intoxicated, but to aid the jury in understanding HGN. Officer Vice authenticated and identified the DVD as one he viewed in the district attorney's office and that it is used to help officers identify an individual with horizontal gaze nystagmus. Officer Vice explained to the jury that Hartsock's eyes were not on the videos and that the DVD would help him with his

7

testimony because the DVD would help the jury understand the signs he looks for when conducting the HGN test. In addition, the trial court instructed the jury that the DVD did not show Hartsock's eyes and that it was admitted only to aid the jury in understanding what Officer Vice believed he observed as he conducted the HGN test on Hartsock. Finally, the record does not indicate that the DVD was used as direct or substantive evidence to support Hartsock's intoxication.[1] The DVD was admissible as demonstrative evidence. *See Thrasher v. State*, No. 12-09-00334-CR, 2010 WL 2638070, at *2 (Tex. App.—Tyler June 30, 2010, no pet.) (mem. op., not designated for publication).

Having determined that the trial court did not abuse its discretion in admitting the DVD as demonstrative evidence, we overrule Hartsock's sole point.

### IV. Conclusion

Having overruled Hartsock's sole point, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

PUBLISH

DELIVERED: August 19, 2010

---

[1] The record does not reveal that the State mentioned the videos on the DVD during closing argument or at any other point in the trial.

8