

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00528-CR

Elisa **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 354985
The Honorable Liza Rodriguez, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  October 16, 2013

AFFIRMED

A jury convicted appellant Elisa Rodriguez of driving while intoxicated ("DWI").  The trial court sentenced Rodriguez to two years' probation.  On appeal, Rodriguez raises five points of error, complaining about alleged jury charge error, denial of a motion for mistrial, denial of due process based on *Brady v. Maryland*, and alleged improper admission of evidence.  We affirm the trial court's judgment.

**BACKGROUND**

Detective Justin Good of the San Antonio Police Department testified that on May 20, 2011, he was working the STEP program, which he described as a federally-funded program used by the City of San Antonio "to combat drunk driving." Detective Good stated that around midnight, he noticed a vehicle, a maroon Ford Taurus, change lanes without using the turn signal. He saw the vehicle's brake lights come on, and noticed one of the brake lights was not working. Based on the lane change and the brake lights, both traffic violations under the Transportation Code, Detective Good "initiated" a traffic stop. However, he waited for the driver to proceed over a bridge before he turned on his lights to allow a safe place for the vehicle to pull over. The detective admitted the driver drove over the bridge, down the bridge, and pulled over in response to his lights–all without incident.

The vehicle pulled to the side of the road and Detective Good approached the driver. Standing at the driver's window, Detective Good testified he smelled "a strong odor of intoxicants coming out of the vehicle." Rodriguez was sitting in the driver's seat, and there were three other people in the vehicle. Based on the strong odor, Detective Good believed someone in the vehicle "had possibly been drinking."

Because he was unsure if the strong odor of intoxicants was emanating from the driver or one of the passengers, Detective Good asked Rodriguez to get out of the vehicle and walk to the rear. At that time, the detective noticed Rodriguez "was a little confused," had bloodshot eyes, and he said he could still smell the strong odor of intoxicants. Detective Good asked Rodriguez if she had been drinking, and if so, how much. Rodriguez told the officer she had three drinks.

Based on his observations and Rodriguez's admission, Detective Good told the jury he "administered some pre S.F.S.T. testing," i.e., pre-standardized field sobriety testing, which included asking Rodriguez to recite the alphabet and count from one to four on her fingers–a

divided attention task. The detective stated Rodriguez was unable to complete either task. Given her failure on the pre-testing tasks, Detective Good said he decided to administer the standard field sobriety testing, which is comprised of three tests: the horizontal gaze nystagmus ("HGN"), the walk–and–turn, and the one-leg stand. Detective Good stated he was able to administer only the HGN test and Rodriguez demonstrated all six clues, indicating intoxication. He explained he did not complete administration of the other two portions of the standard field sobriety testing because Rodriguez "was unable to perform the other ones." He could not remember why she could not perform–whether she was physically unable or simply refused–but stated he gave her an opportunity to perform all three tests.

Given Rodriguez's performance on the pre-testing tasks, the HGN results, her bloodshot eyes, the smell of intoxicants, and Rodriguez's admission that she had three drinks, Detective Good believed Rodriguez was intoxicated and arrested her. On cross-examination, the detective admitted he did not ask Rodriguez over what period of time she had consumed the drinks, nor did he ask her if she had eaten while drinking. The detective agreed these were important issues with regard to the absorption of alcohol. Detective Good also admitted there was no videotape of the stop because he did not have video equipment in his car. He explained that none of the STEP vehicles are equipped with video equipment. Detective Good also admitted he did not use the video room at the magistrate's office.

Detective Good took Rodriguez to the magistrate's office and, after he read her the statutory warning regarding breath specimens, asked for a breath specimen. Rodriguez provided the requested specimen. According to Detective Good, the breath test was performed by the intoxilyzer operator on duty that evening, J.J. Ruiz.

Ruiz, a retired officer who is employed by the City of San Antonio as an intoxilyzer operator, testified his duties require him to administer breath tests to those brought in for suspicion

of DWI. Ruiz stated he has been certified by the Texas Department of Public Safety as an intoxilyzer operator since 1997. Ruiz described how the breath test is performed. Refreshing his recollection with the breath test slip, Ruiz told the jury he performed the breath test on Rodriguez using the Intoxilyzer 5000. He testified the machine was functioning properly on the evening of Rodriguez's test, and that if anything unusual had happened he would have noted it in his report. Ruiz advised that although he is qualified to conduct the breath test, he is not qualified to testify about how the machine operates internally or the underlying science involved. Rather, Ruiz said such information is known to the technical supervisor, Debbie Stephens.

The State called Stephens as its final witness. She told the jury she is employed as a senior forensic scientist and technical supervisor with Bexar Breath Testing, a company that contracts with Bexar County to maintain and calibrate the intoxilyzer instruments used in the breath alcohol testing program. Stephens testified about her background and stated she is certified as a technical supervisor by the Texas Department of Public Safety "specifically to maintain and calibrate the breath alcohol testing instruments." Stephens stated the only instrument used in Texas is the Intoxilyzer 5000.

Stephens explained to the jury how the Intoxilyzer 5000 is maintained and how it operates. She specifically testified the machine used to test Rodriguez's breath sample was tested and calibrated in February 2011. However, she admitted she did not perform the tests or the calibration because she did not arrive in Bexar County until August 2011. Stephens said the February 2011 testing and calibrations were performed by her predecessor. However, she advised the test results are maintained in the computer system, and that she is the current custodian of records for the computer system. She then authenticated the computer maintenance records, which she testified established the Intoxilyzer 5000 was operating properly on the date Rodriguez was given the breath test.

Based on her forensic training and field experience, Stephens testified about the effects of alcohol on the human body and the body's rate of alcohol absorption. Stephens stated the Intoxilyzer 5000 showed Rodriguez's alcohol concentration was at least .18, and that because this is more than twice the legal limit, she opined Rodriguez was intoxicated when she was arrested. On cross-examination, Rodriguez questioned the accuracy and fallibility of the machine. In response, Stephens testified that "as to the quantitation [sic] of alcohol, I have never seen it give a false result positively."

After Stephens's testimony, both sides rested and closed. After closing arguments, the jury retired to deliberate. Ultimately, the jury returned a verdict of guilty. The trial court sentenced Rodriguez to probation, and she perfected this appeal.

## ANALYSIS

As noted above, Rodriguez raises five points of error on appeal. She contends: (1) the trial court erred in refusing her request for an article 38.23 instruction in the jury charge; (2) the trial court erred in denying her motion for mistrial after the trial court incorrectly informed the jury panel there was no law requiring police officers to video record their stops; (3) she was denied due process when the State failed to turn over potentially exculpatory evidence, specifically that the former technical supervisor for Bexar Breath Testing had been diagnosed with a mental disease, and that the current technical supervisor was dismissed by the Austin Police Department; (4) the trial court erred in admitting into evidence State's Exhibit 10, the maintenance report for the intoxilyzer machine that was prepared by Stephens; and (5) the trial court erred in admitting into evidence State's Exhibits 2–4.

### *Jury Instruction–Article 38.23*

Rodriguez first contends the trial court erred in refusing her request to include an article 38.23 instruction in the jury charge. Article 38.23(a) states:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005); *see Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). The triggering mechanism for a jury instruction under this article is complex. *Oursbourn*, 259 S.W.3d at 177. "A defendant must establish three foundation requirements to trigger an Article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the statement claimed to be involuntary." *Id.* The instruction is required only if there is a genuine dispute about a material fact. *Id.* The defendant must provide evidence that, if credited, would create reasonable doubt as to a particular factual matter essential to the issue of whether the evidence was obtained legally. *See id.* And, as the court of criminal appeals has specifically held, the necessary factual dispute must be raised by the defendant with affirmative evidence, not by mere cross-examination or argument. *Id.*

Here, Rodriguez contends she was entitled to an article 38.23 instruction because Detective Good failed to offer her "the complete panoply of test under the SFST," and because the detective failed to record his encounter with Rodriguez when he stopped her or when he took her to the magistrate's office for the breath test. We disagree.

First, the record does not support Rodriguez's claim that the detective failed to offer her "the complete panoply of test under the SFST." As set forth above, Detective Good explained he did not complete administration of the other two portions of the standard field sobriety testing–the

walk and turn and the one-leg stand–because Rodriguez "was unable to perform" them. Admittedly, he could not remember why she could not perform, but he specifically testified he gave her an opportunity to perform all three tests. Moreover, there is no law–constitutional or otherwise–requiring that an officer provide a driver with the complete field sobriety test before an arrest for the offense of DWI. Finally, Rodriguez did not raise a factual dispute with regard to what occurred when Detective Good stopped and tested Rodriguez, much less one raised with affirmative evidence as opposed to mere cross-examination or argument. *See id.* The record reflects Rodriguez rested at the conclusion of the State's case without putting on any evidence.

Second, as to the failure to videotape Rodriguez at the scene or at the magistrate's office, we find no law requiring that all DWI encounters be videotaped. At trial, Rodriguez pointed the trial court to an opinion from the Texas Attorney General that required certain counties to obtain and maintain video equipment. *See* Tex. Att'y Gen. Op. No. GA–0731 (2009) (opining that statute, Act of June 16, 1983, 68th Leg., R.S., ch. 303 § 24(a), 1983 Tex. Gen. Laws 1568, 1605, requires counties with population of 25,000 or more to purchase and maintain electronic devices to make visual recordings of persons arrested within county for offense of DWI, but does not require county to maintain room dedicated to videotaping such arrested persons or to keep equipment in specific location). However, this is a far cry from requiring each police encounter with a potential DWI suspect to be videotaped.[1]

Rodriguez also cites to *Logan v. State* to support her claim that Detective Good (and all officers) are required to videotape DWI suspects. *See* 757 S.W.2d 160, 162 (Tex. App.—San Antonio 1988, no pet.). However, as the State points out, *Logan* does not support Rodriguez's

---

[1] Moreover, another subsection of the statute relied upon by Rodriguez specifically states the fact that an arresting officer failed to visually record a person is admissible, as it allows the defendant to argue the absence of the video creates reasonable doubt. *See Irion v. State*, 703 S.W.2d 362, 364 (Tex. App.—Austin 1986, no pet.) (citing Act of June 16, 1983, 68th Leg., R.S., ch. 303 § 24(c), 1983 Tex. Gen. Laws 1568, 1605).

claim. Rather, in *Logan*, this court held that although a defendant may argue to the jury the absence of a video recording establishes reasonable doubt, a jury instruction based on the absence of videotaped evidence would be an improper comment on the weight of the evidence, which is exactly what the trial court in this case pointed out in denying Rodriguez's request for the jury instruction. *See id.*; *see also Irion*, 703 S.W.2d 364 (holding statute requiring certain counties to purchase and maintain video recording equipment does not mandate that absence of videotape, in and of itself, results in acquittal or insufficiency of evidence).

Moreover, Rodriguez's contention also fails because, just as with the field sobriety tests, there is no factual dispute raised by Rodriguez with regard to the encounter between Detective Good and Rodriguez, much less one raised with affirmative evidence as opposed to mere cross-examination or argument. *See id.* Again, the record reflects Rodriguez rested at the conclusion of the State's case without putting on any evidence.

Accordingly, we hold Rodriguez failed to establish the three foundations necessary to trigger the submission of an article 38.23 jury instruction. We therefore overrule her first point of error.

### *Motion for Mistrial*

In her second point of error, Rodriguez contends the trial court erred in denying her motion for mistrial after the court incorrectly informed the venire there was no law requiring police officers to video record their stops. Rodriguez contends the trial court's actions affected her credibility with the chosen jurors.

A mistrial is required when an "error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *see Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (holding mistrial is appropriate only for errors that are highly prejudicial and incurable). Whether a mistrial is necessary is

determined by examining the particular facts of the case. *Ladd*, 3 S.W.3d at 567. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Ladd*, 3 S.W.3d at 567. A trial court does not abuse its discretion unless its decision falls outside the zone of reasonable disagreement. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (en banc); *see Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

During voir dire, counsel for Rodriguez twice told the venire the law required San Antonio police officers to have video equipment in their vehicles. The State objected both times, stating there was no such law, and the trial court sustained each objection. Thereafter, the following occurred:

> PROSPECTIVE JUROR: The remark that you just made, there was a video camera in that particular car at that time?
>
> [COUNSEL FOR RODRIGUEZ]: Ma'am, all cars are supposed to have a video.
>
> [COUNSEL FOR THE STATE]: Objection, Your Honor.
>
> THE COURT: Okay, that objection has been sustained already three time.
>
> [COUNSEL FOR RODRIGUEZ]: Okay.
>
> THE COURT: So counsel's statement is counsel's statement; it is not the law. Okay.

Thereafter, just before trial began, Rodriguez again raised the issue of required videotaping, providing the trial court with a copy of the Texas Attorney General opinion described in our analysis of the first point of error. Rodriguez argued the opinion proved she correctly informed the venire that videotaping was legally required, and the trial court, by advising the venire this was not the law, had destroyed her credibility. Thus, Rodriguez argued, a mistrial was warranted.

As discussed above, the opinion from the Texas Attorney General states certain counties are required to obtain and maintain video equipment. *See* Tex. Att'y Gen. Op. No. GA–0731. The

opinion does not, however, require that all law enforcement vehicles be equipped with video recorders or that each law enforcement encounter with the public be videotaped. *Id.*; *Irion*, 703 S.W.2d 364. Because Texas law does not require that all law enforcement vehicles be equipped with video recorders, the trial court did not err in sustaining the State's objection during voir dire, nor did it err in advising the venire the law was not as Rodriguez's counsel stated. Accordingly, we hold there was no basis for the motion for mistrial, and thus the trial court did not abuse its discretion in denying it. We overrule Rodriguez's second issue.

### *Disclosure of Brady Material*

Rodriguez next asserts she was denied due process because the State failed to turn over potentially exculpatory evidence as required by the law–specifically, that the former technical supervisor for Bexar Breath Testing had been diagnosed with a mental disease, and that the current technical supervisor was dismissed by the Austin Police Department. In other words, Rodriguez contends the State failed to turn over material as required by the Supreme Court's decision in *Brady v. Maryland*. *See* 373 U.S. 83 (1963) (holding prosecutor's suppression of evidence favorable to defendant upon request violates due process where evidence is material, irrespective of good or bad faith of prosecution).

We must first determine whether Rodriguez's *Brady* claim was preserved for appellate review. To preserve a complaint for appellate review, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 33.1(a)(1)(A)). Moreover, the appellate record must show the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and

the complaining party objected to the refusal." *Id.* The rule of preservation applies to *Brady* claims. *See id.*

In this case, Rodriguez's brief contains no citations to the record with regard to the *Brady* allegation. We have independently searched the record and there is nothing therein to show Rodriguez, explicitly or implicitly, asserted a *Brady* violation at any point during the trial or post–trial. Rather, this allegation appears to have been raised for the first time in this court. Accordingly, we hold Rodriguez has failed to preserve this complaint for our review. *See id.*

Moreover, we note that in her brief, Rodriguez blanketly asserts the State was aware of the alleged assertions relating to the former and current technical advisor, but failed to disclose that information. However, there is nothing in the record to support the allegations themselves, much less that the State failed to disclose them. Thus, even if preserved, Rodriguez has not established reversible *Brady* error. *See id.* (holding that to establish reversible error under *Brady*, defendant must show, among other things, State failed to disclose evidence). We overrule Rodriguez's third point of error.

### *Admission of State's Exhibit 10*

Rodriguez states, with regard to her fourth point of error, the trial court erred in admitting into evidence State's Exhibit 10, the maintenance report for the intoxilyzer machine prepared by Stephens. In her point of error, Rodriguez states the document should not have been admitted because Stephens had no personal knowledge of the accuracy of the information within the document. However, within the discussion of the point of error, Rodriguez provides three paragraphs setting out what occurred at trial, and then a single paragraph that constitutes her entire argument:

> The offered testimony was inadmissible because the technique was not generally
> accepted as reliable in the relevant scientific community[,] had not been subject to
> verification and scrutiny by others in the field, had not been published, had not been

subjected to the normal peer review process, and had been generated solely for the purpose of litigation.

She then asks for a new trial on this basis. First, the argument set forth does not comport with the point of error. In fact, they are two wholly separate contentions. Assuming the "argument" portion is the actual complaint as opposed to the mere statement of alleged error, we hold it does not constitute a substantive argument. The "argument" contains no supporting authority and no analysis. This failure is fatal because a brief must contain a clear and concise argument for the contentions made that is supported by authority. *See* TEX. R. APP. P. 38.1(i). An issue or point of error that contains nothing more than conclusory statements and offers no explanation of, much less argument for, an allegation of error is inadequately briefed, and therefore waived. *See Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000); *Garcia v. State*, 887 S.W.2d 862, 876 (Tex. Crim. App. 1994), *abrogated on other grounds by Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001). In *Tong*, the court of criminal appeals held that even when an appellant makes a novel argument on appeal for which there is no authority directly on point, "he must ground his contention in analogous case law or provide the court with the relevant jurisprudential framework for evaluating his claim." 25 S.W.3d at 710. Because the appellant cited no relevant case law, the court found the issue inadequately briefed, and overruled it. *Id.*

In *Garcia*, the appellant's brief listed the alleged error and claimed it violated a general proposition of law. 887 S.W.2d at 876. The court of criminal appeals held the appellant had failed to present argument, leaving the court to guess at its substance. *Id.* The court held it must "insist that appellant meet his burden of providing clear and specific arguments." *Id.* Relying on the predecessor to Rule 38.1(i), the court overruled the appellant's point of error. *Id.*

Rodriguez's fourth point of error suffers from the same deficiencies recognized by the court in *Tong* and *Garcia*. The point contains no citation to authority and lacks any argument, much

less clear and specific arguments.  Accordingly, her complaint in point of error four is inadequately briefed.  *See Tong*, 25 S.W.3d at 710; *Garcia*, 887 S.W.2d at 876.

Moreover, Rodriguez's appellate complaint does not comport with her trial objection.  At trial, she asserted the exhibit should be excluded because Stephens was not the "record custodian" "when that information was entered into the computer."  When a complaint on appeal does not comport with the objection made at trial, the issue is waived.  *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (holding that "[w]hether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").  To the extent Rodriguez may have attempted to raise a complaint of fundamental error, thereby excusing any lack of preservation, we hold the error asserted does not rise to the level of fundamental error.  *See Clark*, 365 S.W.3d at 340 (holding defendant's failure to object waived error because claim of prosecutorial misconduct did not rise to level of fundamental error).

Based on the foregoing, we hold Rodriguez failed to present anything for our review with regard to her fourth point of error.  Accordingly, we overrule this point.

### *Demonstrative Evidence–State's Exhibits 2–4*

In her final point of error, Rodriguez contends the trial court erred in admitting into evidence, and publishing to the jury, State's exhibits 2–4.  Although Rodriguez guises her complaint as an improper admission of evidence, the record establishes the exhibits were not admitted; rather, the State offered them and they were published for demonstrative purposes only during the testimony of Detective Good.

A trial court's decision to permit the use of demonstrative evidence is reviewed under the abuse of discretion standard.  *See Hartsock v. State*, 322 S.W.3d 775, 778–79 (Tex. App.—Fort Worth 2010, no pet.).  Demonstrative evidence has no independent relevance, but is offered to help

explain or summarize a witness's testimony. *Id.* To be admissible, demonstrative evidence must be relevant to the issues in the case and have evidentiary value, i.e., it must shed light on the subject at hand. *Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981).

During Detective Good's testimony, the State asked him to explain the HGN test. During the explanation, the State asked the detective to identify State's Exhibits 2–4. Detective Good identified Exhibit 2 as the department's "basic checklist for the HGN, the horizontal gaze nystagmus test." He then identified Exhibits 3 and 4 as DVDs featuring videos of an individual's eyes with and without nystagmus. Detective Good testified that each of these exhibits would assist the jury in understanding his testimony. He admitted the eyes on the video were not Rodriguez's eyes, but were the eyes of an unknown individual. The State offered the exhibits–for demonstrative purposes only–and asked that they be published to the jury. Rodriguez objected on grounds of relevance, leading, hearsay, and bolstering. The trial court overruled the objections.

On appeal, Rodriguez complains the trial court erred when it "admitted into evidence" State's Exhibit 2–4. As we have noted, these exhibits were not admitted into evidence, but were offered and used only for demonstrative purposes–this is clear from the record. In her brief, Rodriguez wholly fails to address the use of the exhibits for demonstrative purposes or cite any authority relating to the use of evidence for demonstrative purposes. Moreover, Rodriguez's argument within this point of error is a morass of contentions, generally unsupported by argument or authority, and unrelated to her trial objections.

Rodriguez begins the argument in her brief by referring to the exhibits in question, but she then moves to complaining that Detective Good did not prepare the exhibits, and he lacks "any specialized education about the eyes." This appears to be a challenge to his qualifications She then notes the HGN test was the only portion of the field sobriety test conducted, and complains about the detective's ability to remember the details of the HGN, but not why Rodriguez was

unable to complete the other portions of the field sobriety test. This seems like a challenge to the detective's credibility.

Rodriguez's argument then moves to the fact that Rodriguez was not taken to the video room at the magistrate's office, which she claims resulted in a denial of "her constitutional rights to defend herself and the police officer destroying evidence." Next, she alleges the officer failed to comply with the NHTSA recommendations regarding field sobriety tests, and because he did not follow standard procedures, his testimony was inadmissible expert testimony under Rules 402 and 702 of the Texas Rules of Evidence. Rodriguez then contends she was not given the field sobriety test, the detective was not familiar with the test standards, and did not perform the vertical nystagmus test.

As with the argument in the previous point of error, the "argument" in point of error five contains no applicable supporting authority and is devoid of any legal analysis. As noted above, this failure is fatal. *See* TEX. R. APP. P. 38.1(i). Because this point of error contains nothing more than conclusory statements and offers no legal argument for the allegations made, it is inadequately briefed. *See Tong*, 25 S.W.3d at 710; *Garcia*, 887 S.W.2d at 876.

Additionally the complaints in point of error five do not comport with the trial objections made with regard to the demonstrative exhibits. As stated in our analysis of the fourth point of error, when a complaint on appeal does not comport with the objection made at trial, the issue is waived. *See Clark*, 365 S.W.3d at 339; *Wilson*, 71 S.W.3d at 349; *see also Pena*, 295 S.W.3d at 464. Moreover, if Rodriguez is attempting to raise a complaint of fundamental error, thereby excusing any lack of preservation, we hold the errors asserted do not rise to the level of fundamental error. *See Clark*, 365 S.W.3d at 340.

We hold Rodriguez failed to present anything for our review with regard to her fifth point of error due to inadequate briefing and lack of preservation. Accordingly, we overrule this point.

**CONCLUSION**

Based on the foregoing, we overrule Rodriguez's points of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish