**Opinion issued December 9, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00288-CR

———————————

**BRADLEY ALAN DEPOY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 4**
**Montgomery County, Texas[1]**
**Trial Court Case No. 12-277402**

---

[1]     The Supreme Court of Texas, pursuant to its docket equalization authority, transferred the appeal to this court. *See* Misc. Docket No. 13–9042 (Tex. Mar. 26, 2013); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer).

**MEMORANDUM OPINION**

A jury found appellant, Bradley Alan Depoy, guilty of the offense of driving while intoxicated.[2] The trial court assessed his punishment at confinement for 180 days, suspended the sentence, placed him on community supervision for one year, and assessed a fine of $750. In two issues, appellant contends that the trial court erred in denying his motion to suppress his oral statements and admitting a demonstrative exhibit.

We affirm.

## Background

City of Shenandoah Police Department Officer T. Schmaltz testified that while on patrol on the night of April 19, 2012, he received a report of a driver of a black automobile weaving on Interstate 45. He located the automobile, which was being driven by appellant, and saw that appellant was unable to keep his car within a single marked lane. Schmalz activated the emergency lights of his patrol car, but appellant did not stop for approximately 45 seconds, which Schmaltz considered to be an unusual delay under the circumstances.

When Officer Schmaltz approached appellant, he noted that appellant's eyes were bloodshot and watery, there was a strong odor of alcohol coming from appellant's automobile, and appellant had a breath mint in his mouth. Schmaltz

_____

[2] *See* TEX. PENAL CODE ANN. § 49.04 (Vernon Supp. 2014).

2

asked appellant where he had been, and appellant responded that he had just picked up his two passengers from "Baker's Street," a local bar. When Schmaltz asked appellant if he had been drinking, appellant responded in slurred speech that he had had "a couple of drinks." Schmaltz then asked for appellant's keys and cellular telephone and any belonging to his passengers. Schmaltz placed the keys and telephones on top of the automobile, which he testified was for "safety" purposes.

After running appellant's license information, Officer Schmaltz returned to appellant and asked him to step out of the automobile. Based on his observations of appellant's driving, the strong odor of alcohol emanating from appellant's car, and appellant's "bloodshot watery eyes" and "slurred speech," Schmaltz concluded that an investigation into appellant's possible impairment was warranted.

When Officer Schmaltz asked appellant if he could search him, appellant replied that he had no objection. Schmaltz directed appellant to put his hands behind his back and place them together as if he were "praying." Schmaltz patted him down and, with appellant's consent, checked his pockets. Schmaltz then asked appellant to turn around and go with him to the patrol car to answer some questions. The dash-camera videotape that was admitted into evidence at trial reveals that Schmaltz interviewed appellant as follows:

> [Schmaltz]: When did you last eat?
> [Appellant]: I ate probably two-and-a-half hours ago. . . .
> [Schmaltz]: What did you have?

3

[Appellant]: I had a— guess turkey and rice actually.

[Schmaltz]: Have you been drinking?

[Appellant]: I had a couple drinks, yes, sir.

[Schmaltz]: What kind of drinks?

[Appellant]: I had a couple beers with my brother. . . .

[Schmaltz]: How big were the beers?

[Appellant]: Just regular beers . . . . Sixteen ounce cans.

[Schmaltz]: What kind?

[Appellant]: Bud Light.

[Schmaltz]: And when you say a couple, was it two, three?

[Appellant]: I mean like three.

[Schmaltz]: What time was your first drink?

[Appellant]: Probably 8:30. . . .

[Schmaltz]: And when was your last drink?

[Appellant]: My last drink was probably an hour ago.

[Schmaltz]: Which would have been at what time?

[Appellant]: Twelve o'clock.

[Schmaltz]: If you had to rate the effects of the drinks on a scale of zero to ten, zero being sober [and] ten being hammered drunk, what numerical value would you put [inaudible].

[Appellant]: I'd say it'd probably be a three. . . .

Schmaltz then asked appellant whether he had any medical issues, was taking any medications, was using any kind of illegal drugs, and when he had last slept.

Officer Schmaltz then administered field sobriety tests to appellant, including the horizontal gaze nystagmus ("HGN"), walk-and-turn, and one-leg balance tests. During his testimony, the trial court admitted, over appellant's objection, an HGN video for demonstrative purposes. Schmaltz opined that, after

4

conducting all of the field sobriety tests, and in light of his previous observations of appellant, appellant was intoxicated.

The trial court denied appellant's motion to suppress his videotaped statements made at the scene. After appellant filed this appeal, we abated the case and remanded it to the trial court for findings of fact and conclusions of law regarding the voluntariness of appellant's statements.[3] The trial court found, in pertinent part, as follows:

. . . .

2.  A concerned citizen reported to police that [appellant] . . . was driving erratically.

3.  Officer [Schmaltz] located [appellant's] vehicle, observed the vehicle weaving, and conducted a traffic stop on [appellant's] vehicle.

4.  During the traffic stop, Schmaltz requested the keys to the vehicle and the cellular telephones of the vehicle's occupants. [Appellant] and the other occupants handed those items to Schmaltz, who placed the items on top of the vehicle. Schmaltz placed the items on top of the vehicle to prevent anyone from leaving or summoning other people to the scene of the traffic stop.

5.  Before conducting an investigation into [appellant's] intoxication, Schmaltz requested and received permission to search [appellant's] person. During the search, Schmaltz instructed [appellant] to interlace his fingers behind his back. The search was brief, and was captured on the patrol car video admitted into evidence at trial.

---

[3]    *See* TEX. CODE CRIM. PROC. ANN. 38.22 § 6 (Vernon Supp. 2014); *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004).

5

6. Schmaltz then asked [appellant] a series of questions related to several topics, including the mechanical condition of the vehicle, and the [appellant's] overall health and drinking activities.

7. Schmaltz then requested that [appellant] perform the standardized field sobriety tests. [Appellant] performed the tests, and was ultimately arrested for driving while intoxicated.

8. Prior to the formal arrest, Schmaltz never informed [appellant] that he believed [appellant] had committed the offense of driving while intoxicated or any other offense, and did not place handcuffs or otherwise physically restrain [appellant's] freedom of movement.

The trial court made the following conclusions of law:

1. [Appellant] was not in custody at the time he answered the questions posed by Schmaltz.

2. [Appellant's] freedom of movement was not restrained to the degree associated with formal arrest at the time he answered the questions posed by Schmaltz.

3. [Appellant's] responses were not the result of a custodial interrogation, and therefore, suppression of the defendant's statements is not required.

**Motion to Suppress Videotaped Statements**

In his first issue, appellant argues that the trial court erred in denying his motion to suppress his videotaped statements at the scene because he was subjected to custodial interrogation without having been advised of his legal rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2014). Specifically, appellant sought to suppress the portion of the video revealing his responses to Officer Schmaltz's interview questions.

6

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). We generally consider only the evidence adduced at the suppression hearing unless the parties consensually re-litigate the issue at trial, in which case we also consider relevant trial testimony. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility, and it may choose to believe or disbelieve all or any part of a witness's testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When, as here, the trial court files findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* We

will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d 853, 855–56.

Appellant moved to suppress his responses to Officer Schmaltz's questions, as depicted in the videotape, on the ground that they were the product of a custodial interrogation. At a pre-trial hearing on appellant's motion to suppress, Officer Schmaltz testified that he initiated a traffic stop because appellant was "weaving" and failed to maintain a single marked lane along Interstate 45. He noted that, after he activated the emergency equipment on his patrol car, it took appellant approximately 45 seconds to stop, which Schmaltz perceived to be a lengthy amount of time under the circumstances.

When Officer Schmaltz approached appellant, he noted that appellant's eyes were bloodshot and watery, he had a mint in his mouth, and there was a "strong odor of alcoholic beverage coming out of the car." Schmaltz asked appellant from where he was coming, and appellant responded "Baker's Street," a local bar. And when Schmaltz asked appellant if he had been drinking, appellant, in slurred speech, admitted that he had.

Officer Schmaltz further testified, and the videotape corroborates, that he asked appellant for his license and asked him to remove his keys from the ignition. And Schmaltz placed the keys on top of the automobile. He explained that, "at that

point, [he] needed to conduct [his] investigation to see if [appellant] was safe to operate a motor vehicle." Schmaltz also requested and received appellant's cellular telephone, along with those of appellant's two passengers. He explained that he routinely collects all cellular telephones for his safety, specifically, to prevent the occupants of a vehicle from contacting others to come to the scene. Schmaltz placed the cellular telephones on top of the automobile.

Officer Schmaltz then asked appellant to step out of his car, place his hands behind his back, and "interlace" his fingers as if he were "praying." Schmaltz patted him down and, after receiving his permission, searched appellant's pockets. Schmaltz then asked appellant whether and, if so, what he had been drinking, when he took his first and last drinks, when and what he had eaten, whether he could feel the effects of alcohol, and about any medical issues. Schmaltz explained that these questions were not taken from an official law enforcement form. Rather, they were based on his training and forms that he had seen in other states. And he noted that he had been trained to ask these questions prior to administering field sobriety tests.

Appellant testified at the hearing on his motion to suppress that when Officer Schmaltz instructed him to turn over his keys and cellular telephone, step out of the car, and place his hands behind his back, he "actually thought [he] was under arrest." He further testified that had he been advised that he had a right to

remain silent, he "might have declined the interview." After hearing appellant's testimony, the trial court denied appellant's motion to suppress his responses to the videotaped interview.

The Fifth Amendment to the United States Constitution "commands that no person 'shall be compelled in any criminal case to be a witness against himself [.]'" *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (citing U.S. CONST. amend. V; *see also* U.S. CONST. amend. XIV). The United States Supreme Court has set out warnings to be administered by law enforcement officers to safeguard the constitutional right against self-incrimination during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467–79, 86 S. Ct. 1602, 1624–30 (1966). Also, Texas Code of Criminal Procedure article 38.22 governs the admissibility of statements made by defendants during custodial interrogations. *Herrera*, 241 S.W.3d at 526. An oral statement is admissible against a defendant in a criminal proceeding if, among other things: (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Section 2(a) before the statement was made and it is included on the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings. TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(1)–(2). These warnings are virtually identical to the *Miranda* warnings, except that *Miranda* does not require a warning that the accused "has the right to terminate the interview at any time."

10

*Herrera*, 241 S.W.3d at 526. Warnings under *Miranda* and article 38.22 are required only when a person is subjected to a custodial interrogation. *Id.*

A "custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 525 (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612). "Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal proceeding during its case-in-chief." *Id.*

A person held for an investigative detention is not in custody. *See Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Id.* General situations that may constitute custody include: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he or she cannot leave; (3) when the law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest and the officer does not tell the suspect that he or she is free to leave. *Id*. at 255. In the first through the third situations, the restriction upon freedom of movement must amount to the degree *associated with*

*an arrest rather than an investigative detention*. *Id.* In the fourth situation, the existence of probable cause must be manifested to the suspect. *Id.*

A trial court's custody determination "presents a 'mixed question of law and fact.'" *Herrera*, 241 S.W.3d at 526. Therefore, we afford almost total deference to the trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id.* at 526–27. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review the trial court's custody determination de novo. *Id.*

Appellant argues that he was in custody at the time he made his statements because "a second police unit had arrived on scene," his keys and cellular telephone had been taken from him, and he was asked to place his hands behind his back with his hands together like he was being arrested. Appellant asserts that, based on these circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. And he notes that Officer Schmaltz testified that he was not free to leave.

"An ordinary traffic stop usually involves a single police car and one or two officers." *State v. Ortiz*, 382 S.W.3d 367, 374 (Tex. Crim. App. 2012). Here, the fact that two police cars and two officers were on the scene by the time that appellant made the statements at issue might "add[] at least marginally to . . . [a] conclusion" that he was in custody. *See id.* (concluding presence on scene of two

police cars and three officers added to conclusion defendant in custody for *Miranda* purposes).

Courts have held, however, that taking a driver's keys during a traffic stop does not constitute custody. *See Campbell v. State*, 325 S.W.3d 223, 235 (Tex. App.—Fort Worth 2010, no pet.) (holding defendant not in custody when officer took his keys; rather, such was "part of a continuing investigation"); *State v. Whittington*, 401 S.W.3d 263, 275 (Tex. App.—San Antonio 2013, no pet.) (concluding taking of defendant's keys constituted "an additional restraint on [his] freedom of movement," but "not enough to escalate [his] detention into an arrest"); *see, e.g.*, *White v. State*, No. 08-06-00050-CR, 2007 WL 853134, at *4 (Tex. App.—El Paso Mar. 22, 2007, no pet.) (not designated for publication) (concluding defendant detained and not in custody when officer took keys because officer's suspicion defendant intoxicated had not been dispelled or confirmed).

Here, the record shows that Officer Schmaltz took appellant's keys and cellular telephone and placed them on top of appellant's automobile. The videotape shows that Schmaltz told appellant that he was placing them there until they finished their "business." And Schmaltz testified that he did so for safety reasons, namely, to prevent a possibly intoxicated person from driving away before his status could be ascertained and to curtail the summoning of others to the scene. Appellant does not direct us to any authority to support his argument that the

taking of his keys and cellular telephone during the traffic stop for suspicion of intoxication escalated his detention into an arrest.

Further, even if Officer Schmaltz had handcuffed appellant during questioning, the mere act of handcuffing, by itself, will not establish custody. *Ortiz*, 382 S.W.3d at 374. It may be a relevant factor, however, that lends support to a conclusion that a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Id.*; *Dowthitt*, 931 S.W.2d at 255.

The videotape shows that appellant was not handcuffed and Officer Schmaltz only asked appellant to momentarily place his hands behind his back while he patted him down for weapons and conducted a search to which appellant had consented. Once completed, Schmaltz instructed appellant to turn around and follow him to his patrol car to answer a few questions. The videotape shows that appellant, with his hands at his sides, followed Schmaltz and, although appellant again placed his hands behind his back during questioning, Schmaltz did not instruct him to do so.

Finally, although Officer Schmaltz testified that appellant was not free to leave during the period of time at issue, not being free to leave is an inherent feature of a temporary detention. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010); *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008)

14

("That is precisely what *Terry* permits—a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed.").

Having examined the totality of the circumstances, we conclude that the record supports the trial court's conclusion that appellant's freedom of movement was not restrained to the degree associated with a formal arrest. *See Sheppard*, 271 S.W.3d at 291, 293. And because appellant was not in custody, article 38.22 warnings were not required. *See Herrera*, 241 S.W.3d at 525. Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress his videotaped statements.

We overrule appellant's first issue.

**Admission of Demonstrative Exhibit**

In his second issue, appellant argues that the trial court erred in admitting an HGN videotape for demonstrative purposes because it was not relevant, any relevance was outweighed by its prejudicial effect, and it lacked the proper predicate.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *see Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981) (reviewing trial court's admission of demonstrative evidence for abuse of discretion); *Onwukwe v.*

*State*, 186 S.W.3d 81, 84 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). We will uphold an evidentiary ruling if it is correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Demonstrative evidence is evidence admitted to serve as a visual aid or illustration that is offered merely to help explain or summarize a witness' testimony or to put events into better perspective. *Baker v. State*, 177 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Torres v. State*, 116 S.W.3d 208, 213 (Tex. App.—El Paso 2003, no pet.). "[A]n article sought to be exhibited to the jury must be shown to be properly identified, as against any idea of speculation, conjecture, or presumption of what the exhibit represents." *Onwukwe*, 186 S.W.3d at 84.

Here, during Officer Schmaltz's trial testimony, the State moved to admit a training videotape depicting a close-up view of two sets of eyes, one purporting to be the eyes of a "sober" person reacting to an HGN test and the other the eyes of an "intoxicated" person reacting to an HGN test. Appellant objected, asserting that the videotape was not relevant, its probative value was substantially outweighed by the danger of unfair prejudice, and it was without a proper predicate.

At a hearing outside the presence of the jury, Officer Schmaltz identified the videotape as one he had viewed in his classes to help officers identify intoxicated individuals with HGN testing. He noted that he did not know the individuals in the video or the cause of the nystagmus in the eyes of the "intoxicated" person. The trial court overruled appellant's objection and stated that it would admit the videotape for demonstrative purposes if the State laid the proper predicate to establish that the videotape showed what Schmaltz would typically observe in sober and intoxicated persons during HGN testing.

Officer Schmaltz then explained to the jury that the eyes of the intoxicated person in the videotape were not those of appellant but of an unknown individual; the videotape shows "what nystagmus is"; and it shows what he would observe during HGN testing of a sober versus an intoxicated person. In addition, the trial court instructed the jury that the videotape did not depict appellant's eyes and was admitted only to aid the jury with a visual demonstration of HGN.

Appellant acknowledges that appellate courts have previously held that trial courts did not abuse their discretion in admitting HGN videotapes for demonstrative purposes and, even if not admissible, any error in their admission would have been harmless. *See Hartsock v. State*, 322 S.W.3d 775, 779–80 (Tex. App.—Fort Worth 2010, no pet.) (allowing videotape depicting "an individual's eyes with and without nystagmus"); *see, e.g.*, *Guerrero v. State*, No. 01-11-01013-

17

CR, 2013 WL 3354653, at *8, *10 (Tex. App.—Houston [1st Dist.] July 2, 2013, pet. ref'd) (mem. op., not designated for publication) (trial court did not abuse discretion in admitting videotape showing eyes of individuals with and without nystagmus for demonstrative purposes). He argues that this case is distinguishable, however, because here the eyes of the individual without nystagmus are labeled "sober" and the eyes of the individual with nystagmus are labeled "intoxicated." Appellant asserts that these labels "gave the jury substantive evidence that if there was HGN found," then appellant "must be guilty."

Relevant evidence is that which tends to make the existence of a fact of consequence to the determination of the case more or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence is generally admissible. TEX. R. EVID. 402. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. We consider: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

Here, the trial court admitted the videotape for demonstrative purposes only, and the videotape took a minimal amount of time to develop. The State did not have great need for the evidence, as Officer Schmaltz had testified to the details of

18

an HGN test, its administration, and the "clues" that might reveal whether a subject was sober or intoxicated. The videotape visually demonstrated the clues and differences about which Schmaltz had testified. The potential to impress the jury in an irrational way was low, given that Schmaltz explained the point of the video and because the trial court instructed the jury that the video did not depict appellant and was admitted only for demonstrative purposes. We presume that the jury followed the cautionary instructions of the trial court. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011).

We conclude that the trial court's decision to admit the HGN videotape for demonstrative purposes lies within the zone of reasonable disagreement. Accordingly, we hold that the trial court did not err in admitting the videotape for demonstrative purposes.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish. TEX. R. APP. P. 47.2(b).