**Opinion issued November 14, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-22-00310-CR**

———————————

**ROSENDO JESUS RUVALCABA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 20-DCR-092265**

**MEMORANDUM OPINION**

Rosendo Jesus Ruvalcaba appeals his conviction for indecency with a child by exposure. After finding Ruvalcaba guilty, the jury assessed punishment at five years in prison. In five issues, Ruvalcaba argues that (1) the trial court abused its discretion in allowing a witness to improperly bolster the victim's testimony;

(2) the trial court abused its discretion in admitting hearsay; (3) the trial court erred in denying Ruvalcaba's motion for directed verdict; (4) defense counsel rendered ineffective assistance by failing to preserve error; and (5) the trial court erred in submitting punishment to the jury in the absence of a timely-filed written election.[1]

We affirm.

## Background

Noemi[2] recalled a March 16, 2020 incident, when she was 12 years old, that occurred at her Aunt Rosaelia's house, involving her older cousin, Ruvalcaba. Noemi testified that she was on the couch, Ruvalcaba was sitting at the coffee table, Ruvalcaba's daughter, Melanie, was standing in front of the coffee table, and Ruvalcaba's other daughter, Jayla, was next to Noemi on the couch. Ruvalcaba had his hand in his pants during this time.

Noemi testified that after Ruvalcaba asked Jayla to charge his vape, Jayla left the living room. Noemi then went to get her water from her aunt's room, and when she returned, she saw Ruvalcaba standing near the coffee table moving his hand up and down on his penis. Ruvalcaba made no attempt to cover up, and Noemi could see his penis while Ruvalcaba looked at her and smiled.

---

[1] Ruvalcaba's first two issues were raised in his original brief. Subsequently, Ruvalcaba's appellate counsel was appointed as an associate judge, and new appellate counsel was appointed. New appellate counsel filed a supplemental brief, raising three additional issues.

[2] In the underlying proceedings and on appeal, the parties refer to the victim by a pseudonym, Noemi. *See* TEX. R. APP. P. 9.10(a)(3).

After the incident, Noemi went to Aunt Rosaelia's room and texted her sister, Heidy, telling her what had happened and that she had to leave. Noemi testified that she also told Aunt Rosaelia, but she did not believe her. Ruvalcaba entered the room and explained that he was just "scratching down there." Noemi eventually left the home, informed her older sister, Yuri, what had occurred, and they called the police.

Aunt Rosaelia testified that, on March 16, Noemi appeared upset and crying and said she wanted to leave because Ruvalcaba had shown her his "intimate parts." Although Noemi testified that her aunt did not believe her, Aunt Rosaelia testified that she did believe her.

After the jury returned a guilty verdict, it assessed a punishment of five years in prison. Ruvalcaba timely appealed.

## Bolstering Testimony

In his first issue, Ruvalcaba argues that Aunt Rosaelia improperly bolstered Noemi's testimony. Ruvalcaba relies on Rule 608 of the Texas Rules of Evidence in support.[3] The State responds that Ruvalcaba has failed to preserve error.

---

[3] Rule 608 provides, "A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." TEX. R. EVID. 608(a).

To preserve error on appeal, the complaining party must make a timely, specific objection and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *see Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

Here, the State asked Aunt Rosaelia on direct examination, "did you believe Noemi when she told you what had happened?" She answered, "Yes, because she was a girl who would never lie." Ruvalcaba made no objection to this testimony. By failing to object, Ruvalcaba has waived this complaint on appeal. *See* TEX. R. APP. P. 33.1.

We overrule Ruvalcaba's first issue.

## Hearsay

In his second issue, Ruvalcaba argues that the trial court erred in admitting Heidy's text messages because the messages were hearsay, which improperly bolstered Noemi's testimony. The State responds that Heidy's text responses were neither hearsay, nor was Ruvalcaba harmed by their admission.

### Standard of Review and Applicable Law

We review a trial court's evidentiary ruling for abuse of discretion. *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007). As long as the trial court's ruling is within the zone of reasonable disagreement, we will not intercede. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).

As a general rule, an out-of-court statement offered for the purpose of proving the truth of the statement is inadmissible hearsay. TEX. R. EVID. 801(d), 802. A statement is not hearsay if it is not offered to prove the truth of the matter asserted. *See Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999). In limited circumstances, out-of-court unsworn statements can be admitted in court if they are offered to provide context for admissible statements because they are not offered for the truth of the matter asserted. *Langham v. State*, 305 S.W.3d 568, 580–81 (Tex. Crim. App. 2010).

**Analysis**

At trial, Noemi testified that she started texting Heidy after the incident. When the State attempted to question Noemi about the text exchange, Ruvalcaba objected, and the parties approached the bench out of the hearing of the jury.

At the bench conference, the following exchange occurred:

[Defense]: Revisiting the text message issues, the two pages, I don't have a problem—I don't have an objection to this—to [Noemi's] statements in the text messages, but any response to those text messages are hearsay and almost double hearsay.

. . .

[Defense]: The statements by [Noemi] as an excited utterance is—I acknowledge that that's an exception to the hearsay ruling coming in; but any responses to anybody else without them testifying, that's—that's hearsay and double—or it's double hearsay. At the minimum, it's hearsay. So that if the statements of [Heidy] can be redacted and then just what this witness statement, I

5

don't have a problem with that. But any statements by any person who is not testifying and is just reacting to what someone else said, that's not—that doesn't fall into the exception of the hearsay rule. More specifically, excited utterance.

[State]:    So [Heidy's] responses are questions. They're not offered for their truth; they're offered to provide context to [Noemi's] responses to those questions. And—

[Court]:    You're offering it to give context?

[State]:    Absolutely, Judge.

[Court]:    No, I'm going to let them in.

[Defense]:  Just note my objection.

[Court]:    Objection noted.

Back before the jury, Noemi identified exhibit 7, which consisted of two pages of text messages, and the State asked for its admission. After Ruvalcaba stated, "Note my previous objection," the trial court noted his objection and admitted exhibit 7. The trial court then permitted the State to publish the exhibit to the jury.

Once the State asked Noemi to read the text messages included in exhibit 7, the trial court instructed the jury, "The statements by Heidy are not being admitted for the truth of what is said but simply to give some context; that is, a back and forth, okay." Ruvalcaba did not object to the instruction. Noemi and the State then read the following text exchange:

6

Noemi:      Okay.

Heidy:      I'll be home later.

Noemi:      Ok the charger?

Heidy:      Drawer by my bed.

Noemi:      HEIDY!!  I need you to come home now.  I need to talk to you.  Now.

Heidy:      Why?  What happened.  Jovani has the car.

Noemi:      Something I just need you to come plz.  I don't wanna be here.  No more.

Heidy:      Why?  And Jovani has the car we don't have a ride, what happened [Noemi]?  Hello.  Umm?

Noemi:      So I was sitting on the couch wit Jaylah and Melanie and [Ruvalcaba] was there.  He had his hand in his pants Okayy so then he told Jaylah to go put that thing from that vape thing up.  And I went to go get my water from and then I was coming back and I see [Ruvalcaba] put his thing out and was messing wit it looking at me.  But Melanie wasn't looking he was turned around and I don't wanna be here bc of what just happened.  And the door of the room was open but [Aunt Rosaelia] was doin something and didn't see.  And I don't know what to do?  I don't want to be here.

Heidy:      Go to the room, stay in there I'll be there!!!

Noemi:      Okayyy I am.

Heidy:      Did you tell [Aunt Rosaelia]? Call [Aunt Rosaelia] NOW.  I MEAN TELL HER.  I'M CALLING JOVANI RN.

At trial, Ruvalcaba objected to Heidy's text messages in exhibit 7 globally without specifying which statements. On appeal, Ruvalcaba does not take issue with any of Heidy's specific text messages except for stating, "Heidy then directed Noemi to go to a room and stay there and to tell Rosaelia what happened," asserting this was an out of court statement offered for the truth of the matter.[4]

The State argued below that Heidy's text messages were not offered for their truth but to provide context to Noemi's responses. Ruvalcaba did not dispute that characterization at trial or on appeal.

We cannot say that the trial court's decision to admit Heidy's text messages was an abuse of discretion. After Ruvalcaba objected based on hearsay, the State informed the trial court that they were not offered for the truth of the matter, but to show context for Noemi's responses. *See Guidry*, 9 S.W.3d at 152 (recognizing that "a statement which is not offered to prove the truth of the matter asserted, but is offered for some other reason, is not hearsay").[5] Ruvalcaba neither responded to the State's argument, nor did he object when the trial court instructed the jury that

---

[4]   Ruvalcaba appears to be referring to Heidy's text messages that state, "Go to the room, stay in there I'll be there!!!!" and "Did you tell [Aunt Rosaelia]? Call [Aunt Rosaelia] NOW."

[5]   *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (explaining that "[a]n extrajudicial statement . . . which is offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay").

8

Heidy's text messages were not offered for the truth of the matter.[6] Accordingly, we conclude that the trial court did not abuse its discretion in admitting Heidy's text messages.[7]

We overrule Ruvalcaba's second issue.

## Reading of the Indictment

In his third issue, Ruvalcaba argues that the trial court erred in denying his motion for directed verdict based on the State's failure to read the indictment before it rested its case. The State responds that the trial court properly denied the directed verdict because Ruvalcaba did not direct the trial court to the correct curative measures.

### Standard of Review and Applicable Law

Code of Criminal Procedure article 36.01(a)(1) provides as follows:

(a)   A jury being impaneled in any criminal action, except as provided by Subsection (b) of this article, the cause shall proceed in the following order:

1.   The indictment or information shall be read to the jury by the attorney prosecuting.

---

[6]   "Limiting instructions ensure that the jury does not rely on admitted evidence for an impermissible purpose." *Baker v. State*, 177 S.W.3d 113, 124 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Lewis v. State*, 815 S.W.2d 560, 566 (Tex. Crim. App. 1991)).

[7]   Ruvalcaba also argues that Heidy's text messages improperly bolstered Noemi's testimony because they indicated that Heidy believed that Noemi was telling the truth. Because Ruvalcaba did not raise this objection in the trial court, this contention is waived on appeal. *See* TEX. R. APP. P. 33.1.

TEX. CODE CRIM. PROC. art. 36.01(a)(1).

The reading of the charging instrument is mandatory and serves the dual purposes of informing the accused of the charges against him and informing the jury of the charges against the accused. *Warren v. State*, 693 S.W.2d 414, 415 (Tex. Crim. App. 1985); *Lopez v. State*, 452 S.W.3d 425, 428 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "Error which results from not reading the indictment . . . and not entering a plea can be cured at trial." *Warren*, 693 S.W.2d at 416. "The procedure to be followed has been long established: upon learning of the error, the indictment is read to the jury, the accused enters a plea and the State reintroduces the evidence; or the parties may stipulate to the evidence." *Id.*

**Analysis**

After the State and Ruvalcaba rested and while discussing the jury charge, the State explained how it had previously asked the trial court to arraign Ruvalcaba, but it really meant that they were requesting to read the indictment. The State requested permission from the trial court to reopen and read the indictment, permit Ruvalcaba to enter a plea, and then reoffer all the evidence before closing the case.

Ruvalcaba responded, "I have to object, Judge. They understand the process, the procedure, what they have to follow. They failed to do—do so, and

10

I'm going to object that they be allowed. And they also rested. So I'm going to object to them being allowed to reopen." The following exchange then occurred:

[Court]: Well, I'm going to allow them to reopen and do that. First of all, we always did the reading of the indictment when I was on the bench the whole time so—but things have changed so much with all of the drama of COVID and whatnot. I didn't know. You know, of course, we had people go down and qualify the jury before we came down to start our presentation, so I mean, a lot of this is getting used to what's happening now. But I think it's appropriate to allow them to reopen for that purpose, and I'm going to do that.

[Defense]: Just so I can make the record clear that I'm objecting that the Court has allowed them to reopen, that by failing to do so, that they did not meet their burden. By allowing them to reopen, it's highly prejudicial to my client. So the record's clear.

. . .

[Court]: Was he not arraigned at any point in time before the trial started? I mean. . .

[Defense]: We've always—When I represent them, we've waived arraignment.

[State]: Yes, he was. The Court arraigned him prior to trial and we requested that the Court arraign him and you did give him some admonishments and he did enter a plea and there's no question about that. But this particular statute doesn't call it an arraignment. It just specifically says that we should read the indictment. And so in order to comply with—

. . .

[State]: —the specificity of that statute, he may have been arraigned; but in order to meet the requirement that we

11

read the indictment, we just want to go ahead and do that for the record.

[Court]: I'm going to allow you to do that because if he was arraigned or waived arraignment, he had a right at that time to have it read to him by the Court and decided not to probably because he was aware of—probably had been handed a copy of the indictment and had gone over it with counsel; but I don't know that. So I'm going to let you reopen so you can do that.

[State]: Thank you, Judge. And just—And, briefly, if I may respond to his argument or statement on the record that this was a failure by the State to meet its burden, this is a—a procedural issue. I believe that this—satisfying this requirement is sort of ministerial in nature, and it does not go to the substantive evidence or any of the elements that the State has had to prove. And then—And so that'll be the State's response with regard to that issue.

. . .

[Defense]: Just one last one. Since the State has rested and failed to read the indictment, I would ask for a directed verdict.

[Court]: Directed verdict is denied.

After further discussion, the trial court permitted the State to reopen and read the indictment, to which Ruvalcaba pled not guilty. The following exchange then occurred:

[State]: We would simply reoffer the evidence as presented; and after that, we would rest.

[Court]: All right.

[Defense]: After my prior objections, I understand. And with them resting, the defense rests.

12

Here, the record shows that at the beginning of trial, the trial court arraigned Ruvalcaba both before and after the jury was present and asked whether he understood that he had been charged with the offense of indecency with a child by exposure and that the punishment range was two to ten years in prison. Ruvalcaba answered affirmatively and pled not guilty. The trial began with the State's opening statement, Ruvalcaba's opening statement, the presentation of evidence, and both sides resting. The State never read the indictment to Ruvalcaba at the beginning of trial.

Once the State realized the error after it rested, but before closing arguments, the State asked to read the indictment. Although Ruvalcaba objected to the State's reopening, the trial court overruled the objection and allowed the State to partially cure the late-reading of the indictment by reading the indictment and obtaining Ruvalcaba's plea. *See Warren*, 693 S.W.2d at 416. The State then reoffered the evidence previously admitted, without recalling witnesses, and without Ruvalcaba's stipulation to the evidence. By not reintroducing evidence or getting a stipulation of evidence from Ruvalcaba, procedural error occurred. *See Castillo v. State*, 530 S.W.2d 952, 954 (Tex. Crim. App. 1976).

The procedural error, however, has not been preserved because at the time that the trial court permitted the State to reopen and reoffer the evidence, Ruvalcaba did not direct the trial court to the correct curative measure—the State

13

reintroducing the evidence or Ruvalcaba stipulating to the evidence. *See Do v. State*, 634 S.W.3d 883, 892 (Tex. Crim. App. 2021). In *Do*, the Court of Criminal Appeals explained,

> When the charging instrument is read late . . . the error can be cured by reading the charging instrument . . . having the accused enter a plea to it, and having the State reintroduce the evidence heard before the charging instrument was read (or the parties can stipulate to the evidence). When the charging instrument is read late, a defendant forfeits error if he fails to raise an objection that puts the trial court on notice of the correct curative measures.

*Id*. at 892.

While Ruvalcaba objected to the State reopening the evidence[8] and moved for a directed verdict, contending that the State did not meet its burden,[9] he did not apprise the trial court of the correct curative measure for the procedural error and made no objection to the State reoffering the evidence. Accordingly, under these facts, the error has not been preserved. *See id.*

We overrule Ruvalcaba's third issue.

---

[8] On appeal, Ruvalcaba does not argue that the trial court abused its discretion in permitting the State to reopen.

[9] "Error in connection with the State's failure to timely join issue on an allegation in the charging instrument is treated as trial error, not as an insufficiency of the evidence." *Do v. State*, 634 S.W.3d 883, 891 (Tex. Crim. App. 2021). Thus, the trial court properly denied Ruvalcaba's request for a directed verdict because it was not the proper objection for a curable procedural error.

## Ineffective Assistance of Counsel

In his fourth issue, Ruvalcaba argues that if he failed to preserve his third issue, his defense counsel rendered ineffective assistance. The State responds that Ruvalcaba has not shown that counsel was ineffective or that he was prejudiced.

### Standard of Review and Applicable Law

We evaluate claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Id*. at 687–94; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 695. A defendant must establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Any claim for ineffectiveness of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citations omitted).

"[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021).

**Analysis**

Ruvalcaba cites no authority in support that failing to preserve error, let alone curable error, is ineffective assistance. *See* TEX. R. APP. P. 38.1(i). Ruvalcaba argues, "If defense counsel had [required the State to recall their witnesses and reintroduce their exhibits after the reading of the indictment], defense counsel would have preserved reversible error." But Ruvalcaba's unsupported statement does not show deficient performance. If defense counsel had followed the correct procedure, the error of not reading the indictment at the beginning of trial would have been cured. *See Warren*, 693 S.W.2d at 416 ("The procedure to be followed has been long established: upon learning of the error, the indictment is read to the jury, the accused enters a plea and the State reintroduces the evidence; or the parties may stipulate to the evidence."). Moreover, other than stating, "Defense counsel's error harmed Appellant," Ruvalcaba also makes no argument as to how he was prejudiced by his counsel's failure to preserve curable error. *See* TEX. R. APP. P. 38.1(i).

Here, Ruvalcaba did not file a motion for new trial. Therefore, we have no record detailing counsel's reasoning behind his actions or inactions. *See Johnson*,

16

624 S.W.3d at 586.  Because we have nothing before us from which to determine why counsel failed to preserve the issue by informing the trial court of the correct procedure after the late-reading of the indictment, Ruvalcaba's allegation of ineffectiveness is not firmly founded in the record, and the record does not affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 813.  Accordingly, we hold that Ruvalcaba has not sustained his burden of proving his ineffective assistance claim by a preponderance of the evidence.

We overrule Ruvalcaba's fourth issue.

## Punishment Assessed by the Jury

In his fifth issue, Ruvalcaba contends that the trial court erred in allowing the jury to assess punishment in the absence of his timely-filed written election. The State responds that the trial court did not err because Ruvalcaba did not object.

### Applicable Law

Punishment by jury is a statutory right. *See Martin v. State*, 753 S.W.2d 384, 389 (Tex. Crim. App. 1988).  Under Article 37.07, Section 2(b), of the Texas Code of Criminal Procedure, a criminal defendant has a statutory right to have the jury assess punishment if he "so elects in writing before the commencement of the voir dire examination of the jury panel." TEX. CODE CRIM. PROC. art. 37.07, § 2(b). Otherwise, the trial court has the responsibility to assess the punishment. *See id.*  A

defendant, however, can waive statutory rights concerning the assessment of punishment. *Dickson v. State*, 492 S.W.2d 267, 270 (Tex. Crim. App. 1973).

**Analysis**

Ruvalcaba does not argue that he made any objection to the jury determining punishment, and our review of the record reflects that he never objected at any time to the assessment of punishment by the jury.

In *Dickson*, the court asked "[i]s there anything inherently detrimental in the jury assessing punishment which appellant could not waive by his failure to object to such procedure? We think not." *Id*. at 270. Noting that "a defendant can waive statutory rights with regard to assessment of punishment," the court concluded "[a]lthough the jury was not authorized to assess punishment under Article 37.07, Sec. 2(b) . . . . , in the instant case, we conclude that in view of appellant's failure to object to such procedure, no reversible error is presented." *Id*.

Because Ruvalcaba made no objection to the jury assessing punishment, he waived this issue. *See Reynolds v. State*, No. 05-06-00328-CR, 2007 WL 29728, at *2 (Tex. App.—Dallas Jan. 5, 2007, pet. ref'd) (not designated for publication) (holding that despite no written election, appellant did not preserve jury-punishment complaint because he failed to object).

We overrule Ruvalcaba's fifth issue.

## Conclusion

For all of these reasons, we therefore affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

Do not publish. *See* TEX. R. APP. P. 47.2(b).